27194. McGINTY *v.* THE STATE.

DECIDED MARCH 17, 1939.

*Boykin & Boykin, Homer A. Glore,* for plaintiff in error.

*Hal C. Hutchens, solicitor-general,* contra.

MᴀᴄIɴᴛʏʀᴇ, J. McGinty was indicted under the Code, § 26-2804, which declares: "Any county treasurer who shall divert, misapply, embezzle, or conceal any money belonging to the county of which he is such county treasurer, with intent to appropriate the same to his own use, shall be punished by imprisonment in the penitentiary for not less than two years nor more than 20 years, and shall be removed from office. On the trial of such defendant, proof of his having failed or refused to make an exhibit to the grand jury of the county of which he is such treasurer, at the superior court first held in each year in said county (unless prevented by providential cause), a full and complete statement of the county's funds, received by him during the preceding year, as required by law, shall be deemed prima facie evidence of guilt, and throw the burden of proof on him. The prosecuting officer shall not be required to identify the money, coin, or bank bills, or other property misapplied, embezzled, or concealed, but an allegation that any sum of money or evidence of debt has been received by the defendant belonging to the county, and that he fails or refuses to account for the same, if proved, shall authorize a conviction, unless the defendant shall set up and sustain a valid and legal defense to the charge." He was convicted, moved for a new trial, and to the judgment overruling his motion he excepted.

The indictment was demurred to on the ground that it was vague, uncertain, and wanting in particularity. The indictment alleged a named date on which the crime was committed, and then alleged a violation of the statute by B. M. Styles, the county treasurer, in the language of the act. Every essential ingredient of the offense was set forth in the indictment. The description of the acts alleged as constituting the offense were full enough to enable the jury, without difficulty, to know what the charge was against the accused, Styles. It affirmatively appeared from the indictment what particular instances were meant; the indictment was sufficient to enable Styles to prepare his defense and to enable the jury to clearly understand the nature of the offense. The indictment is exact enough to protect the accused, Styles, from a second jeopardy.

The indictment then charged, "That J. H. McGinty, being absent at the time of the commission of the crime aforesaid, in the manner and form aforesaid, by the said B. M. Styles, did yet then and there unlawfully and fraudulently procure, counsel, and command the said B. M. Styles to commit the crime of embezzlement of county money as aforesaid, . ." The demurrer of McGinty was properly overruled as to him. *Hawkins* v. *State*, 58 *Ga. App.* 386 (198 S. E. 551).

It seems to us that the State was contending that Styles embezzled $1450.58, and that the defendant, the auditor, had unlawfully and fraudulently procured, counseled, and commanded Styles to commit the crime of embezzling county money. The evidence for the State, before the incident hereinafter recited, tended to show that the defendant, McGinty, had obtained, by a check from Styles, $600 of the said $1450.58, after the latter amount had been taken from the account of Styles as treasurer of the county and placed in an account in another bank in his, Styles's, individual name.

The defendant seems to contend that Styles, the treasurer, owed him $200 for some work done for him individually in connection with the audit, and that the county owed him, the defendant, $400 for making the audit, but, through some error, the county voucher numbered 840, with red-ink notations thereon, which should have been made out to the defendant as auditor, was erroneously made payable to Styles, and this was the voucher about which the defendant's counsel was endeavoring to cross-examine the State's witness. The defendant contended that the said $600 that Styles subsequently paid him was paid by Styles out of his, Styles's, individual money, and was for the $200 that Styles owed him individually and the $400 which the county owed him and for which the voucher had been erroneously made out to Styles individually instead of to the defendant. The State's witness, Styles, had already testified that voucher numbered 840 with the red-ink notations thereon, which was made out to him, was for the $400 which the county owed the auditor, the defendant, for the audit. However, Styles differed with the defendant as to the circumstances under which the $600 item, claimed to have been embezzled, was paid to the auditor. Be this as it may, it seems to us that when the chairman of the board of county commissioners, a witness for the State,

was on the stand and had testified, "I was chairman of the board of county commissioners of Douglas County in 1936. We employed J. H. McGinty to make an audit of the county affairs in 1936. This looks like a regular bill for services for audit in the year 1935, and the year 1936. That looks like it was put into the commissioners. That is the bill number and suppose [supposed] to be the warrant number. I do not know about the red," defendant's counsel should have been allowed, on cross-examination, to ask the county commissioner what the voucher numbered 840, with the red-ink notations thereon, was given for, it not appearing on the face of the voucher for what consideration it was issued.

The record discloses further that counsel for movant, on cross-examination, asked the following questions of J. M. Morris, chairman of the board of commissioners of Douglas County, Georgia, and witness for the State:

Q. "Voucher 841, you don't know who that was paid to, do you, you don't know anything about the voucher of your own knowledge, do you, who it was issued to?"

Solicitor-general: "I object to the nature of the question."

The court: "I rule it out; you are seeking to show what he knows, not what he don't know."

Q. "Do you know anything about what the voucher with the number in red ink, do you know what it was for?"

A. "It seems to have been paid to Mr. Styles, treasurer."

The court: "I rule that out, the contents of the paper. It shows for itself."

Mr. Boykin: "I asked him about the voucher that he was talking about."

The court: "The jury can read the papers."

Mr. Boykin: "He is on cross-examination and I asked him the question directly in response . ."

The court (to the witness): "Come down, come down, counsel knows better than that."

Mr. Boykin: "We want to show by this witness that this voucher was for $400, and voucher 841 was for . ."

The court: "Let's wait until we get to that. He is not offering the voucher yet."

At the time of the asking of these questions the relevancy of voucher 841 had not been disclosed, and it may be that the court

had the right to exclude the testimony as to this voucher until its relevancy appeared. Be that as it may, with reference to voucher 840 for $400 with the red-ink notations thereon, its relevancy had already appeared from a previous witness, Styles, and the State's witness, the chairman of the board of county commissioners, who was then on the stand and who had just been examined by the solicitor-general with reference to it, and defendant's counsel was undertaking to cross-examine the witness with reference to this voucher. We think it would have been very material for the defendant to show, if he could, that this voucher should have been made to him instead of to Styles, and having been erroneously made to Styles, that Styles was rectifying this error by giving him (the defendant) his (Styles's) individual check for $600 to pay him for this $400 error and to also pay him for the $200 which he owed him on his own individual account.

While we fully recognize the rule that "the trial judge has a discretion to control the right of cross-examination within reasonable bounds" (*Rogers* v. *State,* supra), yet it is likewise true that "the right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." Code, § 38-1705. "Cross-examination of the witness of an adversary is a substantial right, the preservation of which is essential to a proper administration of justice, 'and extends to all matters within the knowledge of the witness, the disclosure of which is material to the controversy,' and it is error to deny or abridge this right." *McRae* v. *Boykin,* 50 *Ga. App.* 866, 875 (179 S. E. 535). The court's ruling in the instant case was a denial of the right of cross-examination, and is cause for reversal; and in addition, if it had been proper to exclude the question propounded, yet we think that counsel, while asking the witness the question, should not have been interrupted before he completed the same, and we further think that the witness then and there should not have been peremptorily ordered from the stand. Counsel might have wished to propound other proper questions within the reasonable bounds of cross-examination. *Thompson* v. *State,* 181 *Ga.* 620 (183 S. E. 566); *Becker* v. *Donalson,* 133 *Ga.* 864 (67 S. E. 92). All the other grounds of the motion for new trial have been fully considered in connection with the entire evidence and the charge, and there was

no error in any of them sufficient to require the grant of a new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*