29845.   MELL *v.* THE STATE.

MARCH 6, 1943. REHEARING DENIED APRIL 2, 1943.

*C. G. Battle,* for plaintiff in error.

*Bond Almand, solicitor, John A. Boykin, solicitor-general, Durwood T. Pye, Lindley W. Camp, solicitor,* contra.

MacINTYRE, J. The defendant was accused of charging usury, a misdemeanor; in four counts. Count 1 charges the offense made penal by the Code, §§ 25-301 and 25-9902, and alleges that "On the 1st day of July, 1940, [the accused] did engage in the business of lending money in the amount of three hundred ($300) dollars, and less. and did charge, contract for, and receive a greater rate of interest than eight per centum per annum on said loans and for the use of said money from one Luther Peek, without having a license from the State Superintendent of Banks, contrary to the laws of said State, the good order, peace, and dignity thereof." The accusation is demurred to on the ground that it is not specific enough to put the defendant on notice of the crime charged in order that he may prepare his defense thereto. "Every indictment or accusation . . shall be sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may be easily understood by the jury." Code, § 27-701. This means that an indictment conforming substantially to the requirements of this section will be sufficient, but it is not designed to deny to the accused the right to know enough of the particular facts constituting the alleged offense to enable him to prepare for trial.

There are many statutory offenses where the offense can be de-

scribed in the terms of the language of the Code, but there are other statutory offenses which can not be so described, and such cases are covered by additional words "so plainly that the nature of the offense may be readily understood by the jury." Count 1 of the accusation in the instant case comes under the first class of cases mentioned above. It alleged a named date on which the crime was committed, and then alleged a violation of the statute in the language of the statute. Every essential ingredient was set forth. The description of the acts alleged as constituting the offense was full enough to enable the jury without difficulty to know what the charge was against the accused. It affirmatively appeared what particular illegal business was meant. The accusation was sufficient to enable the jury to clearly understand the nature of the defense. *McGinty* v. *State,* 59 *Ga. App.* 675 (2 S. E. 2d, 134). The accusation is not demurrable on the ground that it does not set forth all acts or each particular act done in the carrying on of the business, or the manner of doing each or any particular act in carrying on the same. This is a matter that properly comes within the realm of evidence. The gist of the offense charged in this count is the engaging in the illegal business therein stated without obtaining a license. It is not necessary for the State to spread out in the indictment the evidence on which the State relies for a conviction. The demurrer to count 1 was properly overruled. *Abel* v. *State,* 64 *Ga. App.* 448 (13 S. E. 2d, 507).

Count 2 of the accusation alleges that the defendant, on the 1st day of July, 1940, did receive, charge, and take for a loan and advance of money, to wit, the sum of twenty ($20) dollars, a rate of interest greater than five (5%) per centum per month, by way of commission for advances, discount, exchange, the purchase of salary and wages, and by contracts and contrivances, and devices to the grand jury of Fulton County unknown, all of which constituted a subterfuge and scheme intentionally used by the accused to evade the laws of the said State, from one Luther Peek, for which sum of money, to wit, twenty ($20) dollars, the accused did charge and take interest in the sum of two ($2) dollars for the use of said sum for a period of fifteen days, which rate of interest amounted to twenty (20%) per centum per month, contrary to the laws of said State, and the good order, peace, and dignity thereof. Count 3 is in the same words and figures as count 2, except that it alleges

that another offense was committed on the 16th day of July, 1940. Count 4 is in the same words and figures as count 2, except that it alleges that another similar offense was committed on the 1st day of August, 1940. Counts 2, 3, and 4 are substantially in the language of the accusation in *Crowe* v. *State,* supra, which was upheld as against a demurrer which raised the same questions presented here. Adhering to the rule stated in the *Crowe* case, counts 2, 3, and 4 are not subject to the demurrer on the grounds urged.

When the defendant's case was called for trial his counsel moved for a continuance, and in paragraph 5 of the petition for certiorari it is alleged as follows: "On the grounds of an absent witness who was alleged to be material to the defense of the defendant, and who was under subpœna, and who was shown to know the facts with reference to each transaction charged in the accusation, and who was not absent by permission or instance of the defendant; and that the motion was not made for the purpose of delay by the defendant, and that he had in good faith intended to have the absent witness present for trial at a later date or term of the court; and that he was unable to try the case without the testimony of the absent witness." In paragraph 2 of the judge's answer he stated: "Answering the allegations of paragraph 5, respondent says that at the time the motion for continuance was made stated he would hear any evidence that might be submitted to support of the motion, but that no evidence was introduced whatever. No witnesses were sworn to the effect that any effort had been made to obtain the presence of the witness; and in connection with the agreement that had been previously made that if such witness was not present when the case was called for trial on December 10th that the case would be tried notwithstanding the absence of such witness. Respondent says that while a motion was made for continuance on account of the absence of such witness, as above stated, no evidence was offered in support of the same, for all of which reasons the motion for continuance was overruled."

The defendant traversed this paragraph of the answer in the following language: "This plaintiff traverses the allegations of the court's answer to the writ of certiorari in said case wherein it is stated in paragraph 2 of said answer to paragraph 5 of this plaintiff's petition, 'that no evidence was introduced whatever. No witnesses were sworn to the effect that any effort had been made to

obtain the presence of the [absent] witness.' Also, 'no evidence was offered in support of the motion.' The true evidence in support of said motion to continue the case was as follows: 'We want to move for a continuance on the ground that the witness [Luther Hames] who has been called here on several occasions is unavailable, although he has been subpœnaed and he is a material witness for the defense. The witness is a member of the military forces of the United States, and I think the court without any proof will recognize that all leaves of absence have been canceled and we will be unable to have him appear; and that we are not able to go to trial without him.' C. G. Battle (counsel for defendant) : 'I want to state, in my place, that this man is a material witness who handled these various transactions charged in this indictment, and knows the facts at first hand with reference to them and that we move for a continuance because he is not available. We have done all we could to get him here and have been unable to get him. We are not making this motion for the purpose of delay, but want the witness in court in good faith for this trial and ask for a continuance until some other day.' "

It will be noted that this motion for a continuance was not made under Code § 81-1412, the provisions of which relate to a continuance on account of the absence of one of the *parties,* but was made under the provisions of the Code, § 27-2002, which relate to the continuance of a criminal case because of the absence of a *witness,* and this section provides, that the continuance may be had "upon sufficient cause shown on oath." Also, Code § 81-1410 provides: "In all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpœnaed; that he resides in the county where the case is pending; that his testimony is material; that such witness is not absent by the permission, directly or indirectly, of such applicant; that he expects he will be able to procure the testimony of such witness at the next term of the court; and that such application is not made for the purpose of delay, but to enable the party to procure the testimony of such absent witness; and must state the facts expected to be proved by such absent witness." Even if the showing made had been under oath, yet the facts to which the absent witness would have testified would not have appeared from such showing. The court was entitled to this infor-

mation in order that he could decide for himself whether the evidence of the absent witness was material and admissible, and not blindly accept the conclusion of defendant's counsel to that effect. Indeed, it was not shown that any one had talked to the witness or that any one knew what he would have testified to if he had been present. *Tippins* v. *State,* 46 *Ga. App.* 812 (169 S. E. 318) ; *Morris* v. *State,* 66 *Ga. App.* 37 (16 S. E. 2d, 908). Hence, the judge did not err in entering the following order : "The traverse to the answer . . coming on . . for trial . . counsel . . moved to strike the traverse on the grounds that the traverse did not raise any material issue to be submitted to the jury and was insufficient as a matter of law, and after argument, the said motion is hereby sustained and said traverse stricken." We can not say that the judge abused his discretion in overruling the motion for a continuance.

■ Exceptions are taken to the admission of certain testimony of the witnesses Luther Peek, Alice Slaton, Mrs. Maude Welsh, and Thomas Lankford. The testimony of these witnesses related, in each instance, to what the defendant contends was a separate transaction, and the substance of each exception is that evidence as to a separate and distinct transaction, which was not charged in the accusation on which the defendant was being tried, was not admissible   The State contends that the separate transactions were usurious transactions and tended to show fraudulent intent and scheme. The controlling issue arising out of the evidence was whether the transactions charged in the accusation were loans, as alleged by the State, or purchases of salary accounts as claimed by the accused. The evidence of the witnesses named was admissible as tending to show a fraudulent intent and scheme on the part of the accused to obtain the property of others by a usurious system or scheme, and as warranting an inference that the transactions charged in the accusation were made in pursuance of the same general purpose. *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26).

■ The defendant contended that the transactions in question were evidenced by written agreements between himself and Peek for the sale of Peek's salary, and that Peek could not testify as to the effect or contents of the papers for the reason that the contracts themselves were the highest and best evidence. It appeared from the testimony that Peek did not have either a copy of the papers

or the originals; that the papers had been retained by the defendant; and that they were inaccessable to the State, in that it could not force the defendant to produce them and thus incriminate himself. The defendant did not produce the papers or introduce them in evidence. The court did not err in allowing Peek to orally testify as to the transactions thus objected to. See in this connection division 7 of this opinion.

■ The court did not commit reversible error in restricting the cross-examination of the witness Parker as to how much money he had on the occasions in question when he was negotiating for money with the defendant, and in not requiring the witness to state what salary he made.

■ During the reading of the law by the solicitor-general to the court in the presence of the jury the following interruption occurred: Mr. Moore: "I object to his reading the facts in a decided case before this jury as improper and inadmissible. It is not a decision by a unanimous bench and is not binding on this or any other court." What was being read to the court was the certified question in the case of *Portwood* v. *Bennett Trading Co.,* 184 *Ga.* 617 (192 S. E. 217), and the second division of the opinion on page 618. It does not appear from this assignment of error that the reading of the facts in the *Portwood* case was for any purpose other than to illustrate a rule of law in the present case. *Cribb* v. *State,* supra, and *Glover* v. *State,* 15 *Ga. App.* 44 (3) (82 S. E. 602).

■ Counts 2, 3, and 4 of the accusation relating to the specific offenses of taking, as interest, more than 5 per cent. per month on the $20 loans as alleged therein were proved by the testimony of Luther Peek. In addition thereto, Peek testified that during the previous year he had borrowed $10 on several successive occasions, under the same scheme as alleged and proved in said counts, the only difference being that on the $10 loans he paid $1 every two weeks while on the $20 loan referred to in said counts he paid $2 every two weeks. Said payments were made on his pay day which came semimonthly. In addition, there were two receipts in evidence which the jury could have found were circumstances which tended to support the State's theory that the transactions were acts of loaning money at usurious interest and not mere purchases of salary. Peek also testified that he had not sold the defendant his salary, for, as he understood it, he was borrowing the money. The

evidence of other witnesses disclosed several other similar transactions with parties other than Peek, which the jury were authorized to find were but operations under a like scheme and device for collecting usury.

The controlling issue was whether the transactions in question were loans, as contended by the State, or were purchases of salary accounts, as was contended by the defendant in his statement to the jury. Whether the transactions were purchases of salary accounts or loans of money for usury depended, not on the form of words used in the contracting, but on the real intent and understanding of the parties. No disguise of language can avail for covering up usury or glossing over a usurious agreement. "It is the policy of the laws of this State to inhibit the taking of usury under every and any pretense or contrivance whatsoever." *McGehee* v. *Petree,* 165 *Ga.* 492 (141 S. E. 206) ; *Public Finance Cor.* v. *State,* 67 *Ga. App.* 635 (21 S. E. 2d, 476) ; *Portwood* v. *Bennett Trading Co.,* supra; *Crowe* v. *State,* supra; *Knight* v. *State,* 64 *Ga. App.* 693 (14 S. E. 2d, 225) ; *Pope* v. *Marshall,* 78 *Ga.* 635 (4 S. E. 116). "No scheme or device has yet been invented, the substantial effect of which is to violate the usury laws of this State, that the courts have not condemned as such. While a bona fide purchase of earned wages is not a loan and is not governed by the laws relating to interest, it has many times been held that what may appear to be an assignment of wages may in substance and in fact be a loan at usurious rates of interest." *Gunnels* v. *Atlanta Bar Asso.,* 191 *Ga.* 366, 381 (12 S. E. 2d, 602, 132 A. L. R. 1165).

The jury were authorized to find that the scheme, as testified to by Peek and several other witnesses, was a contrivance to charge usury rather than the purchase of salary accounts. The verdict of guilty on each of the four counts was authorized by the evidence. The court did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*