72236, 72237. WATSON v. THE STATE (two cases).
(344 SE2d 667)

DEEN, Presiding Judge.

The appellant, James Alton Watson, was convicted of simple assault and aggravated assault with the intent to rape, for which he was sentenced to respective prison terms of one year and ten years. In this appeal, Watson contends that everything connected with his trial and conviction was error.

As dawn approached on June 16, 1985, the appellant first saw Margerita Allen at the Libra Lounge. It was not the beginning of a beautiful friendship.

Around midnight Margerita Allen went with her cousin to the Libra Lounge for dance and drinks. A few minutes after 4:00 a.m., closing time for the lounge, she found herself stranded, her cousin having left earlier without her. The appellant had gallantly offered her a ride home; as they started to leave in his car, however, he drove around to the rear of the building, explaining that he needed to get something in his own business establishment, the Queen of the South Barbeque, which was located next to the Libra Lounge. Accepting the appellant's invitation to join him inside, she looked around the premises while waiting on the appellant, who eventually initiated a sexual advance by touching her breasts and indicating that he would like a "head job."

Hoping to divert this development, she asked for permission to use the rest room, but the appellant made her take off her clothes first. After using the rest room, she attempted to sneak past the appellant, who had by this time also removed his clothing. The appellant grabbed her, and when she resisted, he beat her repeatedly with his fists, pushed her head against the wall, and struck her several times with a metal pipe. Eventually, she was able to throw some object against and crack the front plate glass window, and then break out the window by the force of her body. Naked, bleeding, and

screaming for help, she then ran across the parking lot and into the street, and was aided by a City of Atlanta police officer who happened to be driving to work.

The police officer called for an ambulance to transport Ms. Allen to a hospital, and contacted the DeKalb County Police Department after realizing that the location actually was within DeKalb's jurisdiction. Before the DeKalb police arrived, the appellant drove up and was detained by the Atlanta police officers. Upon their arrival and having been informed by the Atlanta police officers of the incident, the DeKalb police arrested appellant, and searched and impounded the vehicle driven by the appellant. The victim's clothing was lying in plain view on the front seat. One officer, observing blood on the floor and walkway around the broken glass window, entered the premises primarily to check for other bodies. A second officer, who arrived a few minutes later at the scene and was unaware that the first officer had already checked the premises, entered the premises for the same reason and eventually seized a knife and a metal rod.

According to the appellant, although he had been at the Libra Lounge briefly, he had returned to his barbeque stand, which did not close until approximately 5:00 a.m. Later on, Margerita Allen had come to his back door wanting to buy some barbeque, but he had nothing left to sell except a soft drink. As he counted the day's business proceeds, she had bared her breasts and propositioned him. Uninterested, he had continued to count the money, when the telephone rang. As he answered the phone, he saw her grab some of his money and he lurched after her. There was a brief struggle, during which he slapped her, but she slipped away and ran through the plate glass window, dropping the money as she did so. Retrieving the dropped money, he noticed a car drive off in a hurried fashion; he called the police and got in his car to chase what he suspected had been the victim's getaway car. He had not even left the parking lot, when he drove back to the front of his barbeque stand and was arrested by the police on the scene. He claimed that he did not own the automobile impounded and searched by the police, but that it was a car that he had repossessed for a finance company. He also suggested that the substance on the floor of his premises, identified as blood by the police, probably had been barbeque sauce, explaining that at the Queen of the South Barbeque "you wouldn't know blood from barbeque sauce." He also maintained that Ms. Allen had been fully clothed when she ran through the plate glass window, and that he had no idea how her clothing got into the vehicle.

At trial, William Robertson told how, while making his morning rounds collecting cans, he had observed a naked man and a naked woman struggling inside the Queen of the South Barbeque. Indisposed to interfere with the interpersonal affairs of others, despite the

woman's cries for help, and perhaps mindful of having a living to make, he had continued his route. However, he had stopped on his way back and told the police officers what he had seen.

The appellant was indicted for two counts of aggravated assault, one by assaulting with a deadly weapon and the other by assaulting with the intent to rape. The jury returned a verdict of guilty of simple assault and aggravated assault with the intent to rape. The appellant moved for new trial and also moved for arrest of the judgment, and the trial court denied both motions. Appeal number 72236 concerns the denial of the appellant's motion for new trial, while appeal number 72237 concerns the denial of the motion for arrest of the judgment; because the issues in each appeal are identical, the appeals are here consolidated. *Held*:

1. Many of the appellant's enumerations of error concern the sufficiency and validity of the indictment. The appellant contends that the indictment was void, on the basis that both counts omitted essential elements of the crime and particular facts that constituted the alleged offenses. See *Ponder v. State*, 121 Ga. App. 788 (175 SE2d 55) (1970). Under OCGA § 16-5-21 (a) a person commits aggravated assault when he assaults either (1) with the intent to murder, rape or rob; or (2) with a deadly weapon or any object which, used offensively against a person, is likely to or actually does result in serious bodily injury. In the instant case, count one of the indictment charged the appellant with aggravated assault by assaulting "Margerita Allen with a metal pipe, a deadly weapon when used in the manner in which it was used." Count two charged him with aggravated assault by assaulting Margerita Allen with the intent to rape her. Both counts thus track the language of the statute and sufficiently contain and inform the defendant of the elements of the offenses charged. See *Williams v. State*, 165 Ga. App. 69 (299 SE2d 402) (1983); *Mealor v. State*, 135 Ga. App. 682 (218 SE2d 683) (1975); OCGA § 17-7-54, generally. Having specified the particular species of aggravated assault charged in each count, the state was not required to summarize in the indictment the evidence which it intended to adduce at trial. *Mell v. State*, 69 Ga. App. 302 (25 SE2d 142) (1943); cf. *Lee v. State*, 117 Ga. App. 765 (162 SE2d 229) (1968). See also *State v. Black*, 149 Ga. App. 389 (254 SE2d 506) (1979).

2. The appellant also attempts to articulate a double jeopardy argument, contending that he was improperly tried and convicted of two crimes that arose out of but one transaction. Under OCGA §§ 16-1-6 and 16-1-7, a defendant may be prosecuted for two crimes based on the same conduct, but he may not be convicted of more than one crime if one crime is included in the other. The appellant's contention thus would have merit only if the aggravated assault with the deadly weapon (or rather the derivative simple assault) and aggravated as-

sault with the intent to rape merged as a matter of law or fact. We find no merger because there was sufficient evidence of two separate assaults. Cf. *Luke v. State,* 171 Ga. App. 201 (318 SE2d 833) (1984). The simple assault was a sequential reaction to the victim's resistance to the charged sexual assault. See *McCulligh v. State,* 169 Ga. App. 717 (314 SE2d 724) (1984), and *Strozier v. State,* 171 Ga. App. 703 (320 SE2d 764) (1984).

3. The appellant's contention that there was a fatal variance between the indictment and the evidence adduced at trial is without merit. Allegations and proof must correspond sufficiently in order to enable a defendant to present his defense and not be taken by surprise by the evidence at trial, and to protect the defendant against another prosecution for the same offense. *McCrary v. State,* 252 Ga. 521, 523 (314 SE2d 662) (1984); *DePalma v. State,* 225 Ga. 465 (169 SE2d 801) (1969). In this case, there was no variance except for an obvious typographical error in the appellant's middle name indicated in the first count of the indictment. His middle name, Alton, was misspelled as Atlon, and the error occurred only in that one count. The appellant, however, has shown this to be nothing more than an inconsequential, clerical error. See *Thompson v. State,* 163 Ga. App. 828 (296 SE2d 123) (1982).

4. The appellant complains about the state's failure to produce a copy of the indictment before arraignment as required by OCGA § 17-7-110 and a copy of a statement he made after being placed in custody. (A copy of the indictment was provided to the appellant's attorney on or about August 22, 1985, over one month before the trial.) However, the record shows that the appellant waived formal arraignment and a copy of the indictment. Concerning the appellant's custodial statement, this is a case, if anything, of non-receipt rather than non-production. The state timely served the appellant's attorney with a copy of the statement, although the attorney apparently never received it. Nevertheless, the state did not fail to produce the statement. Following a *Jackson-Denno* hearing, the trial court correctly determined that the state had sufficiently showed the statement to be voluntary and admissible.

5. During closing argument, the prosecutor referred to the appellant's prior conviction for aggravated assault, and asserted that the appellant received a sentence of one year's imprisonment followed by probation. The appellant's sentence actually was one year's imprisonment which was probated upon payment of a $330 fine, and the appellant's attorney objected to the prosecutor's inaccurate argument. The prosecutor then corrected himself and acknowledged that he had misread the conviction. (The certified copy of the conviction was admitted into evidence and before the jury.) The appellant did not thereafter move for mistrial or rebuke of counsel, and any such mo-

tion would have been misplaced. The prosecutor's misreading of the documentary evidence before the jury, and his immediate correction of his error upon the appellant's objection, produced no conceivable harm.

6. Because the appellant was indicted and tried for aggravated assault with the intent to rape, the trial court instructed the jury on the elements of rape. Contrary to the appellant's contention, this instruction did not violate Canon 3 C (1) (A) of the Georgia Code of Judicial Conduct, the 1983 Georgia Constitution, or the Fourteenth Amendment of the United States Constitution.

7. The appellant contends that the trial court improperly rushed the jury into a verdict and should have declared a mistrial upon being informed by the jury that it did not believe that it could reach a unanimous verdict "today or tomorrow or any day with the evidence" it had. The record shows that at 5:45 p.m. on a Friday afternoon, after the jury had been deliberating for less than four hours, the trial court advised the jury that he had an appointment at 6:30 p.m. and inquired whether the jurors were close to a verdict. In doing so, the trial court stated, "I know you don't want to come back tomorrow, but we may have no choice. I don't want to rush you; I want you to take all the time you need." The foreperson indicated that they had not reached a verdict, but requested that they be allowed to deliberate for fifteen more minutes. In allowing that request, the court reiterated, "Again, I don't want to rush you. I want you to take all the time you need." The above remarks of the trial court form the basis of the appellant's obviously absurd contention that the trial court rushed the jury into reaching a verdict. Compare *Sanders v. State*, 162 Ga. App. 175 (290 SE2d 516) (1982).

When the jury indicated that no verdict had been reached during that additional fifteen-minute period of deliberations and also that it did not believe it could reach a unanimous verdict, the trial court declined to declare a mistrial, stating that the jurors had only been deliberating for approximately four hours, and ordered deliberations to continue the following morning. The following day, of course, the jury did reach a verdict. "Where the jury is hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial. [Cits.] The determination as to whether the jury is in fact hopelessly deadlocked is a matter 'somewhat in the discretion' of the trial court. See *Hyde v. State*, 196 Ga. 475 (1) (26 SE2d 744) (1943)." *Glass v. State*, 250 Ga. 736, 738 (300 SE2d 812) (1983). We find no abuse of discretion in the trial court's not finding the jury to be hopelessly deadlocked after only four hours of deliberation.

8. The appellant moved to suppress the clothing removed from the automobile and the "weapons," i.e., a metal rod and a knife, seized in the Queen of the South Barbeque, on the basis that the war-

rantless searches of the vehicle and the business premises were illegal. The search of the vehicle in this case, as incident to the appellant's arrest, was legal, see *Davis v. State*, 165 Ga. App. 231 (299 SE2d 113) (1983), and, in any event, it appears that the appellant would lack standing to challenge the search since he maintains that it was not his vehicle. Concerning the metal rod and knife seized from the business premises, neither object was admitted into evidence. The metal rod was initially identified as an exhibit for the state (the knife did not even make that much of an appearance), but when the victim unequivocally testified that it was not the pipe with which the appellant struck her, the exhibit obviously lost all evidentiary value and the state did not even tender it into evidence. Even assuming, without deciding, that the warrantless search of the business premises was illegal, it certainly would be harmless error to deny suppression of an object that is not entered into evidence.

9. The appellant's contention that the trial court erred in entertaining and ruling on the motion for new trial, before preparation of the trial transcript, has been rendered moot by our consideration and rejection of his plentiful enumerations.

10. The appellant also challenges the sufficiency of the evidence. However, the evidence, as summarized above, certainly was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that the appellant was guilty of simple assault and aggravated assault with the intent to rape. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. Beasley, J., concurs. Benham, J., concurs in the judgment only.*

DECIDED APRIL 7, 1986 —
REHEARINGS DENIED APRIL 15, 1986 AND APRIL 18, 1986 —

James Alton Watson, *pro se.*
*Robert E. Wilson, District Attorney,* for appellee.