A11A0746. SMITH v. THE STATE.

(715 SE2d 434)

SMITH, Presiding Judge.

Addie Smith appeals, pro se, from her convictions of driving without insurance, failure to register a vehicle, and two counts of obstruction of a law enforcement officer. She asserts insufficient evidence supports her obstruction convictions, that she received ineffective assistance of counsel, that her right to a speedy trial was violated, and numerous other alleged errors. For the reasons set forth below, we affirm.

1. Smith asserts insufficient evidence supports her obstruction conviction because the State failed to prove that she knowingly and willingly obstructed or hindered the law enforcement officers. On appeal, we must view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

So viewed, the evidence shows that Officer Heller stopped Smith after noticing that her dealer "drive-out tag" had expired. When the officer asked Smith for her driver's license and explained the reason he stopped her, she admitted that "she had not gotten the vehicle registered yet because she was not able to afford to do so." After

obtaining her license and a bill of sale for the car, Officer Heller returned to his patrol car and determined through his computer system that the insurance status of the car "was unknown." He returned to Smith, and she verified that she had not yet obtained insurance for the car. When Officer Heller informed Smith that she should contact someone for a ride because he planned to impound her car for lack of registration and insurance, she became visibly upset. He then returned to his car to complete the impound form and citations for Smith.

While Officer Heller completed the required paperwork, Smith stepped out of her car, forcing him to repeat an earlier instruction he had given to her about remaining inside her car. Smith did not immediately comply, and instead asked for the officer's supervisor. After Officer Heller agreed to contact his supervisor, Smith returned to her car.

While Officer Heller continued completing paperwork, he observed Smith moving around in her vehicle "in an agitated obviously frustrated type demeanor." She honked the horn more than once and he saw "her arms sort of flailing about in a sort of frustrated gesture." After completing the forms, Officer Heller continued "to do [his] job" and returned to Smith's car to issue the citations to her even though his supervisor had not yet arrived. As he did so, Officer Lymber, who was not his supervisor, arrived as back-up.

When Officer Heller discovered that Smith had rolled up her driver's side window, he asked her to roll the window down so he could issue her the citations; she rolled it down only an inch. When he asked her to roll the window down some more so that she could sign the citations, Smith refused, stating "she wasn't going to sign the citations, that she hadn't done anything wrong." Officer Heller explained to her several times that her signature was not an admission of guilt, and that she was required to sign it as a promise to appear in court and resolve the citations. When Smith continued to refuse to roll her window down, Officer Heller asked her to step out of her car because he "planned to put her under custodial arrest based on the fact that she hadn't signed the citations" and he could not "impound the vehicle with the person inside it." Smith continued to refuse to get out of the car even though the officer explained that he would be forced to arrest her if she did not sign the citations.

At this point, Sergeant Shaw, the supervisor, arrived. Sergeant Shaw asked Smith "to exit the vehicle so he could speak with her and resolve the issue," but Smith "rant[ed] and rav[ed] on the phone, said that she was not a criminal, she wasn't getting out of the car, that she didn't do anything." She handed a cell phone to Sergeant Shaw through a small crack in her sunroof and asked him to speak with her insurance agent. Sergeant Shaw took the telephone, termi-

nated the call without speaking to anyone, and asked Smith to step out of the car. Sergeant Shaw explained that he hung up the phone because he

> was trying to communicate with her. And she was in the car being a little bit belligerent and not wanting to talk and screaming help me, and that she was going to sue my a\*\*, and that she wasn't getting out of the car. . . . I guess I would call it a tantrum, having a four-year-old. But it was just in a tantrum. So the phone was distracting her from communicating with me. So at that point I decided that the phone call needed to end.

The stand-off between Smith and the officers continued until Sergeant Shaw informed Smith "if she didn't get out of the car we were going to have to break the window to effect the arrest." Smith retorted, "Go ahead, and I'll sue your a\*\*." Sergeant Shaw then broke a back passenger window with his baton, and Smith kept re-locking the car doors each time the officers unlocked them. When Officer Lymber threatened to use his taser on her, Smith finally exited her car, and she was placed under arrest.

We find this evidence sufficient to support Smith's obstruction convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). All of the officers were in full uniform, and Smith repeatedly refused to obey the lawful instructions of Officer Heller and then Sergeant Shaw to exit her car. See *Turner v. State*, 274 Ga. App. 731, 733 (1) (b) (618 SE2d 607) (2005) (affirming obstruction conviction based on defendant's refusal to remain in his vehicle as ordered by police officer).

2. Smith asserts 13 instances of ineffective assistance of counsel. The State asserts we cannot consider the specific claims asserted because they are raised for the first time on appeal. We agree.

The record shows that the trial court appointed different counsel for Smith following her conviction, that this attorney filed a written motion for new trial that did not include a claim for ineffective assistance of counsel, that this attorney raised the issue of ineffective assistance of counsel generally during the motion for new trial hearing, that Smith's trial counsel did not testify in the motion for new trial hearing, and that Smith asked the trial court to deny her motion for new trial so that she could appeal her conviction to this court, pro se, as soon as possible. The trial court granted Smith's request to deny her motion for new trial only after warning Smith of the procedural pitfalls that awaited her on appeal if she failed to avail herself of the opportunity to have an evidentiary hearing on her motion for new trial.

> Our law requires that a claim for ineffective assistance of counsel must be raised at the earliest practical moment. This rule requires that a claim be raised *before appeal* if the opportunity to do so is available; that the ability to raise the issue on a motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising the issue at a later time.

(Citation and punctuation omitted.) *Stegall v. State*, 308 Ga. App. 666, 666 (1) (708 SE2d 387) (2011). In this case, Smith raised none of the specific claims of ineffective assistance of counsel below when she had an opportunity to do so. Consequently, we cannot consider them for the first time on appeal. Id. See also *Buckley v. State*, 270 Ga. App. 493, 497 (5) (d) (606 SE2d 581) (2004) (failure to raise particular claim of ineffective assistance of counsel in the trial court results in waiver of issue on appeal).

3. Smith asserts the State violated her right to a speedy trial. The record shows that she was arrested on February 4, 2009, that the State filed an accusation against her on April 15, 2009, that the case was specially set for trial on November 2, 2009, that it was set for more than one trial calendar before being tried, that her case was tried beginning on April 21, 2010, that she never asserted a violation of her speedy trial rights below, and that the trial court never ruled on the issue.

We cannot consider the merits of Smith's speedy trial claim because she has raised it for the first time on appeal. See *Moore v. State*, 278 Ga. 473, 474 (2) (604 SE2d 139) (2004). "The general rule regarding the raising of issues for the first time on appeal is well known. An issue not raised during the trial in any form calling for a ruling will not be considered by this court." (Citation and punctuation omitted.) *Moore v. State*, 141 Ga. App. 245, 246 (3) (233 SE2d 236) (1977) (defendant may not raise speedy trial claim on appeal for the first time).

4. Smith asserts that the trial court judge violated her oath of office by failing to "impartially discharge and perform all the duties incumbent upon [her], according to the best of [her] abilities and understanding," for two separate reasons. Neither of these claims has merit.

(a) In support of her first claim, Smith points to an isolated statement made by the trial court during sentencing, italicized below.

> Well, I'm going to tell you what I'm going to do, Ms. Smith. I'm going to go ahead and impose sentence now. I will tell you this Ms. Smith, I've been on this bench ten

years. I have never heard a case like this, ever. I have had people argue with police. I have had people do other things to the police. But I'll be real honest, *in many ways I am baffled*. Because I don't understand why this happened. Because it shouldn't have happened. . . .

I think everybody in this room . . . have probably gotten a traffic ticket at this point in our lives where we've disagreed with that. We've not been happy to get a ticket. Nobody is. But I've never had it escalate to this point. And, quite frankly, I think the mental health evaluation recommended by the State is completely appropriate because it should not have happened.

(Emphasis supplied.) We find no merit in Smith's claim that the italicized excerpt demonstrates that the trial judge was imposing sentence "in a state of thorough confusion."

(b) In support of her second claim, Smith takes issue with statements made by the trial court to the assistant solicitor-general's visiting parents that were apparently made outside the presence of the jury and off the record. We cannot consider the merits of this claim because Smith cannot meet her "burden of proving error by the record." *Carr v. State*, 267 Ga. 701, 707 (5) (482 SE2d 314) (1997).

5. Smith asserts the trial court violated her Fourteenth Amendment rights by purposely omitting from the trial transcript testimony, objections, evidence, voir dire, opening statements, closing arguments, and the charge conference "in an attempt to deny Appellant a fair trial and ultimately, a fair appeal." Smith makes no attempt to demonstrate any harm or prejudice resulting from the alleged failures to record. "Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for [this court] to review." (Citations and footnotes omitted.) *Boone v. State*, 250 Ga. App. 133, 139 (11) (549 SE2d 713) (2001).

6. Smith claims the trial court committed reversible error by failing to disclose evidence "that is both favorable and material." We find no merit in this claim for several reasons. First, the *trial court* does not owe such an obligation to the defendant. Second, Smith fails to point to any specific favorable and material evidence that was not provided to her. As Smith "has neither alleged nor shown how [s]he was prejudiced, and our review of the trial transcript discloses no such aggrievement, appellant has not borne [her] burden to show harmful error by the record." (Citation and punctuation omitted.) *Snyder v. State*, 201 Ga. App. 66, 67 (4) (410 SE2d 173) (1991).

7. Smith claims the trial court erred by allowing perjured testimony to be presented to the jury. In support of this claim, Smith points to inconsistencies in the record about which window was broken by Sergeant Shaw (the rear driver's side window versus the rear passenger's side window) and the officers' testimony that their dash camera was not operational. We cannot consider this claim because Smith asserted no "perjury" objection at trial and there was no ruling by the trial court on any such issue. "Appellate courts exist to review asserted error but where the defendant makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review." (Citation omitted.) *Sanders v. State*, 179 Ga. App. 168, 169 (2) (345 SE2d 677) (1986).

8. Smith argues that the trial court "committed reversible error when it denied the Appellant the right to have witnesses in her favor." In support of this argument, Smith points to defense counsel's failure to call witnesses who were present at the time of her arrest or the person with whom she was talking on the cell phone when she handed it to Sergeant Shaw. We cannot consider this claim because Smith points to no place in the record where the trial court denied her request to present the witnesses. *Sanders*, supra.

9. Smith claims the trial court erred by denying her request for a different attorney during her trial, but she fails to support this claim with a citation to the record demonstrating the circumstances of this alleged denial. Because Smith has failed to point to a ruling for this court to review, we cannot consider this claim. *Sanders*, supra.

10. Smith asserts the trial judge's sentence was disproportionate to the gravity of the misdemeanor offenses she committed. The judge sentenced Smith to 12 months confinement for each conviction running concurrently to be served on probation following 60 days of confinement, $1,500 in fines, 100 hours of community service, and a mental health evaluation.

> The Eighth Amendment protects against cruel and unusual punishment, a concept which prohibits, among other things, arbitrary and disproportionate sentences. Unless a sentence is so overly severe or excessive in proportion to the offense as to shock the conscience, a legislatively authorized punishment does not ordinarily exceed the constitutional bound. It could, if the court abused its discretion in imposing a sentence which is excessive and disproportionate in a specific case.

(Citations, punctuation and footnote omitted.) *Small v. State*, 243 Ga. App. 678, 680 (3) (534 SE2d 139) (2000). Here, Smith's sentence is within the statutory limits set by OCGA §§ 16-10-24 (b), 40-6-10 (b), and 40-2-20 (c), and it is not so disproportionate as to shock the conscience. We therefore find no merit in this claim of error. See *McLeod v. State*, 251 Ga. App. 371, 373 (2) (554 SE2d 507) (2001).

11. Smith asserts the trial court "committed reversible error in failing to transmit [her] notice of appeal to the Court of Appeals." This enumeration apparently relates to notices filed by Smith pro se for an appeal to the wrong court. On May 21, 2010, Smith filed a notice of appeal "to the Superior Court of Gwinnett County," and she filed an amended notice of appeal to the same court on May 24, 2010. She also filed a pro se motion for stay pending her appeal to superior court and an affidavit of indigency. The record shows that the trial court scheduled a hearing as a result of these filings and appointed new appellate counsel for her. Following the denial of an out-of-time motion for new trial entertained by the trial court, Smith filed a timely notice of appeal, resulting in the present appeal. See *Washington v. State*, 276 Ga. 655, 656 (1) (581 SE2d 518) (2003).

Because Smith's appeal is presently before this court, her complaint about the trial court's failure to forward her pro se appeal to the wrong court to this court is moot.

*Judgment affirmed. Mikell and Dillard, JJ., concur.*

DECIDED JULY 6, 2011 —
RECONSIDERATION DENIED JULY 27, 2011.

Addie Smith, *pro se*.

Rosanna M. Szabo, Solicitor-General, Joelle M. Nazaire, Zachary W. Procter, Assistant Solicitors-General, for appellee.