**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 4, 2015**

# In the Court of Appeals of Georgia

A14A2114. BRAY v. THE STATE.

BARNES, Presiding Judge.

Following a bench trial, the trial court found Kirk Devin Bray guilty of multiple offenses arising out of a police car chase and collision with another vehicle, including two counts of serious injury by vehicle, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Bray filed a motion for new trial, which the trial court denied. On appeal, Bray contends that there was insufficient evidence to convict him of serious injury by vehicle because the State failed to prove the statutory element of "serious disfigurement"; that there was insufficient evidence to convict him of the firearm-related offenses because the State failed to prove that he knowingly possessed the handgun in question; and that

his sentence under Georgia's recidivist statute was unconstitutionally cruel and unusual. For the reasons discussed below, we affirm.

Construed in the light most favorable to the verdict, see *Trujillo v. State*, 304 Ga. App. 849, 849 (698 SE2d 350) (2010), the evidence showed that the Oconee County Sheriff's Office received information to be on the lookout ("BOLO") for a gray Ford F350 pickup truck with a particular license tag number that had been stolen from its owner in Greene County on May 1, 2011. On the afternoon of May 5, 2011, sheriff's investigators in two separate vehicles that were traveling northbound on Georgia Highway 441 in response to an unrelated matter observed a pickup truck that matched the description in the BOLO. The truck was in the lane to the right of the investigators and drove up the entrance ramp onto the Georgia 10 Loop.

One of the investigators confirmed with the police dispatcher that the license tag number on the pickup truck matched the tag number identified in the BOLO. The confirmed sighting of the truck was relayed to other patrol units in the area, and a police chase ensued in which several deputies had the blue lights and sirens activated on their vehicles. During the chase, the pickup truck, which was traveling at a speed of 80 to 100 miles per hour, crossed over the median of the Georgia 10 Loop and traveled the wrong direction up the exit ramp onto Georgia Highway 316. The truck

2

then proceeded down Highway 316 until the truck reached the intersection of Highway 316 with the Oconee Connector. At that intersection, the truck crossed over a grass median and over two lanes of oncoming traffic, where it collided head-on with a car that was traveling in the right direction. That car was occupied by an elderly married couple, who were rushed to the hospital by ambulance. Because of complications caused by her blood thinner medication and concerns over her heart rate, the wife remained in the hospital for several days after the collision.

After the collision, the driver of the stolen pickup truck, later identified as Bray, fled on foot into the woods. He was apprehended a few hours later when he emerged from the woods near the scene of the collision. A deputy searched Bray and found a bag of methamphetamine in his pocket, and an investigator searched the pickup truck and discovered, among other items, a handgun in a nylon zippered case on the front passenger floorboard. The handgun was registered to a third party who lived in Forsyth County and had been stolen from him a few months earlier.

Following his apprehension, Bray was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and agreed to speak with investigators the day after the collision. During the recorded interview, Bray admitted to the investigators that he had worked as a "middle man" who would drive stolen

3

trucks to another person who would buy them. Bray further admitted that he had driven the stolen pickup truck involved in the collision, that he was a long-time methamphetamine addict, and that he had "dope" in his pocket when he was apprehended. Bray denied knowing that the stolen handgun was in the truck.

Bray subsequently wrote a letter "[t]o the lady who was injured in the accident." In the letter, Bray stated that his "mind [had] not been right in a long time because of [his] drug use" and that he had "remorse for [his] actions." He asked for forgiveness for causing her injuries.

Bray was indicted for 16 criminal offenses, including theft by receiving the stolen pickup truck, two counts of serious injury by vehicle, two counts of fleeing or attempting to elude a police officer, possession of methamphetamine, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.[1] By consent of the parties, a bench trial was conducted in November 2012.

At the bench trial, the sheriff's investigators and deputies involved in the pursuit and apprehension of Bray testified to the events as set out above, and several

---

[1] In a separate indictment, Bray was charged with theft by taking for stealing a different Ford pickup truck in April 2011. The trial court heard evidence regarding this theft as part of the same bench trial and found Bray guilty of the charged offense.

4

eyewitnesses testified about the collision and the driver of the truck fleeing from the scene. The State also introduced into evidence the letter that Bray wrote apologizing to the elderly wife and the video recording of his interview with the investigators. A transcript of the video recording was prepared and provided to the trial court as well.

The elderly couple testified about the collision and the injuries they sustained. The husband testified that after the collision, he temporarily lost consciousness, "couldn't get [his] breath," and had to receive "oxygen in the ambulance." According to the husband, he broke his sternum and several ribs and was so bruised that he was "the color of an eggplant." The husband further testified that his "urine was black for about a week."

The wife testified that she broke her toe, cut and dislocated her finger, cut her knees and the back of her head, and was "black all over" from bruising. The wife also testified that she was hospitalized for six days, including three days in intensive care.

In addition to the elderly couple's testimony, the State introduced testimony from the emergency room physicians who treated them after the collision as well as photographs of their injuries. Among other things, the physicians testified that the husband and wife both sustained sternum and rib fractures revealed by CT scan and that the laceration to the wife's head required staples. The photographs showed severe

bruising in the area of the husband's rib cage, lower back, side, and pelvis, and the wife's dislocated finger and the lacerations to one of her knees and her head.

Similar transaction evidence of Bray's receipt and operation of other stolen trucks was introduced by the State in connection with the theft-related charge. To support the charge of possession of a firearm by a convicted felon, the State introduced a certified copy of Bray's prior indictment, plea, and sentence for theft by taking in March 2008.

After receiving all of the evidence,[2] the trial court found Bray guilty of 14 of the charged offenses, including the specific offenses previously listed. A sentencing hearing ensued in which the State introduced certified copies of Bray's indictment, plea, and sentence to two counts of theft by receiving stolen property in July 2008, and to seven counts of theft by receiving stolen property in September 2008. Taking into account these prior convictions in addition to the theft-by-taking conviction introduced at trial, the trial court sentenced Bray as a recidivist and imposed various concurrent sentences that amounted to 15 years in confinement without parole, followed by 10 years on probation. This appeal followed.

---

[2] Bray elected not to testify and did not call any defense witnesses.

1. Bray contends that there was insufficient evidence to convict him of the two counts of serious injury by vehicle. Specifically, he argues that the State failed to prove the statutory element of serious disfigurement with respect to either the elderly husband or his wife. We are unpersuaded.

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

(Citations and punctuation omitted.) *Trujillo*, 304 Ga. App. at 849.

"Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." OCGA § 40-6-390 (a). A person commits the offense of serious injury by vehicle if, without malice, he causes bodily harm to another by "seriously disfiguring his body or a member thereof" through the violation of OCGA § 40-6-390 (a). OCGA § 40-6-394. "Serious disfigurement" means to gravely or greatly impair or injure the appearance of a person. *Keef v. State*, 220 Ga. App. 134, 137 (1) (a) (469 SE2d 318) (1996). See *Baker v. State*, 246 Ga. 317, 318 (2) (271 SE2d 360 (1980); *In the Interest of H.S.*,

7

199 Ga. App. 481 (405 SE2d 323) (1991). There is no requirement that the disfigurement be permanent. See *Baker v. State*, 245 Ga. 657, 667 (6) (266 SE2d 477) (1980); *Keef*, 220 Ga. App. at 137 (1) (a); *In the Interest of H.S.*, 199 Ga. App. at 481. Furthermore, the question whether an injury constitutes serious disfigurement is normally for the trier of fact. *Silvers v. State*, 245 Ga. App. 486 (1) (538 SE2d 135) (2000). And if the indictment alleges that the victim was seriously disfigured in more than one way, the State need only prove that the victim suffered serious disfigurement in one of those separate ways to sustain a conviction. See *Riddick v. State*, 320 Ga. App. 500, 501 (1) (740 SE2d 244) (2013) ("If a crime may be committed in more than one way, it is sufficient for the [S]tate to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.") (punctuation and footnote omitted).

(a) The indictment alleged that the husband was seriously disfigured in that he suffered a fractured sternum and ribs as a result of the collision. According to Bray, the husband's fractures did not constitute serious disfigurement because these injuries were not discernable to the naked eye and were only discovered once a CT scan was performed, and thus did not impair or injure the husband's appearance. But whether fractured bones rise to the level of serious disfigurement turns on the specific facts

8

of the case. See *Harris v. State*, 272 Ga. App. 366, 369 (2) (612 SE2d 557) (2005). And evidence that the victim fractured a bone, combined with photographs showing bruising or other visible injuries in the area of the fracture, can constitute sufficient evidence of serious disfigurement. See *Christensen v. State*, 245 Ga. App. 165, 167-168 (3) (537 SE2d 446) (2000); *Pollard v. State*, 230 Ga. App. 159, 160 (1) (495 SE2d 629) (1998).

Here, in conjunction with expert medical testimony that the husband sustained "multiple right-side rib fractures," the State introduced a photograph showing severe bruising in that same area of his body. Accordingly, the trial court, sitting as the trier of fact, was authorized to find that the injury to the husband's ribs rose to the level of serious disfigurement. See *Christensen*, 245 Ga. App. at 167-168 (3); *Pollard*, 230 Ga. App. at 160 (1). See also *Baker*, 245 Ga. at 667 (6) (victim's fractured jaw bone could constitute serious disfigurement); *Feagin v. State*, 317 Ga. App. 543, 545 (1) (731 SE2d 78) (2012) (fractured eye socket combined with severe bruising could constitute serious disfigurement).

Bray, however, contends that the trial court could not rely upon the photographic evidence of bruising because the indictment did not specifically refer to bruising when describing the husband's serious disfigurement. Bray's contention

9

is without merit. The indictment specifically averred that the husband was seriously disfigured as a result of the fractures to his ribs, and the State was not required to go further and summarize the specific evidence it intended to introduce at trial to prove that the fractures caused serious disfigurement. See *Harris*, 272 Ga. App. at 369 (2) ("Whether fractured bones constitute serious disfigurement will depend on the specific facts of the case, and the [S]tate is not required to allege all of those facts in the indictment.") (footnotes omitted). See also *Watson v. State*, 178 Ga. App. 778, 780 (1) (344 SE2d 667) (1986) (physical precedent) (State not required to summarize in indictment all of the evidence it intended to introduce at trial to support the charge); *Mell v. State*, 69 Ga. App. 302, 304 (25 SE2d 142) (1943) (same).

(b) The indictment alleged that the wife was seriously disfigured in that she suffered a fractured sternum and ribs, a dislocated finger, and a laceration to her head. Bray contends that the wife's fractured sternum and ribs did not constitute serious disfigurement because they were not discernible to the naked eye, and that none of her remaining injuries were of sufficient severity to show that she was seriously disfigured as a result of the collision. We disagree. Separate and apart from the fractures, evidence that the wife dislocated her finger and sustained a head laceration requiring staples was sufficient to authorize the trial court to find serious

10

disfigurement. See *Ganas v. State*, 245 Ga. App. 645, 646 (1) (a) (537 SE2d 758) (2000) (broken and distended finger could constitute serious disfigurement); *Ramsey v. State*, 233 Ga. App. 810, 811 (1) (505 SE2d 779) (1998) (lacerations requiring stitches could constitute serious disfigurement).

2. Bray also argues that the evidence was insufficient to support his convictions for possession of a firearm during the commission of a crime and possession of a firearm by a convicted felon. According to Bray, the State failed to prove that he knew that the nylon case was in the stolen pickup truck or that it contained a handgun. We do not agree.

> In cases involving contraband found in automobiles, the State is generally entitled to an evidentiary presumption that the owner or driver of the automobile is in constructive possession of the contraband. Here, there was evidence indicating that [Bray] controlled the vehicle in which the [stolen handgun] was found. Thus, evidence existed for the [trial court] to find that [Bray] was guilty of [the firearm-related offenses] beyond a reasonable doubt.

(Punctuation and footnote omitted.) *Salazar v. State*, 326 Ga. App. 627, 630 (1) (b) (757 SE2d 224) (2014). See *Turner v. State*, 277 Ga. App. 205, 206-207 (1) (626 SE2d 176) (2006); *Edwards v. State*, 255 Ga. App. 269, 271-272 (2) (b) (565 SE2d 127) (2002).

11

"Furthermore, knowledge may be proved by facts and circumstances from which [the trier of fact] could reasonably infer that a defendant knowingly possessed contraband." (Punctuation and footnote omitted.) *Salazar*, 326 Ga. App. at 630 (1) (b). In the present case, witnesses to the collision testified that there was only one occupant in the truck, the handgun did not belong to the truck's owner, and the handgun was registered to a third party from whom it had been stolen. Moreover, while the handgun was in a zippered nylon case, the case was on the front passenger side floorboard, and the outline of the case was "more in the shape of a pistol" than rectangular. The trial court, sitting as the trier of fact, was entitled to infer from these circumstances, in combination with the fact that Bray was driving the truck in which the gun was found, that Bray knowingly possessed the handgun and thus find him guilty of the charged offenses. See *Salazar*, 326 Ga. App. at 630 (1) (b).

3. Bray further contends that the trial court's decision to sentence him as a recidivist under OCGA § 17-10-7 (c) to 15 years in confinement without the possibility of parole constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Bray concedes that Georgia courts have upheld the constitutionality of sentences of confinement without the possibility of parole imposed pursuant to OCGA § 17-10-7 (c). See *Hight v. State*, 302 Ga. App.

12

826, 828-829 (5) (692 SE2d 69) (2010); *Howard v. State*, 233 Ga. App. 724, 727 (1) (c) (505 SE2d 768) (1998), overruled in part on other grounds by *Wilson v. State*, 277 Ga. 195, 199 (2) (586 SE2d 669) (2003). Nevertheless, citing to OCGA §§ 16-13-2 (c) and 17-10-7 (b.1), Bray argues that sentencing him as a recidivist was unconstitutionally cruel and unusual under the specific facts of this case because "Georgia has recognized that those convicted of non-violent crimes attributable to substance abuse issues should be given the opportunity to work through these substance abuse issues through focusing on rehabilitation, rather than being condemned to the prison system without any possibility of parole for the maximum time allowable for the offense charged." We are unpersuaded.

"[A] punishment may be unconstitutionally cruel and unusual in the rare circumstance where the defendant's sentence is 'grossly disproportionate' to the underlying crime." *Middleton v. State*, 313 Ga. App. 193, 194 (721 SE2d 111) (2011). See *Graham v. Florida*, 560 U.S. 48, 60 (II) (130 SCt. 2011, 176 LE2d 825) (2010). Notably, however, Bray does not dispute that his sentences fell within the statutory limits for the crimes charged. If the defendant's sentence falls within the statutory range of punishment set by the legislature, a presumption arises that the sentence does not violate the Eighth Amendment, and the "presumption remains until a defendant

13

sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience." (Citation omitted.) *Cuvas v. State*, 306 Ga. App. 679, 683 (2) (703 SE2d 116) (2010). See also *Smith v. State*, 311 Ga. App. 184, 189 (10) (715 SE2d 434) (2011).[3] Bray has failed to make such a showing.

Although Bray describes his crimes in this case as "non-violent," he led the police on a dangerous car chase that culminated in his head-on collision with another vehicle, causing severe injury to its elderly occupants. Furthermore, his multiple prior convictions were all theft-related offenses, and in the present case, Bray was again in possession of a stolen vehicle. Under these circumstances, Bray's contention that his recidivist sentence was unconstitutionally disproportionate to his crimes is without merit. See *Willis v. State*, 316 Ga. App. 258, 268 (7) (728 SE2d 857) (2012).

*Judgment affirmed. Boggs and Branch, JJ., concur.*

---

[3] A punishment also can be unconstitutionally cruel and unusual "if it violates certain narrow 'categorical restrictions' enunciated by the United States Supreme Court," such as the imposition of the death penalty upon juvenile offenders. (Citations omitted.) *Middleton*, 313 Ga. App. at 194. See *Graham*, 560 U.S. at 60-61 (II); *Roper v. Simmons*, 543 U.S. 551, 568 (III) (B) (125 SCt. 1183, 161 LE2d 1) (2005). Bray does not allege that his punishment violates any "categorical restrictions."