A95A1879. KEEF v. THE STATE.
(469 SE2d 318)

McMURRAY, Presiding Judge.
Defendant was charged in an indictment with two counts of "SE-

RIOUS INJURY BY VEHICLE," one count of "DRIVING UNDER THE INFLUENCE OF ALCOHOL AND DRUGS (O.C.G.A. 40-6-391)," namely amphetamine and methamphetamine, to the extent he was less safe to drive, and one count of "DRIVING ON THE WRONG SIDE OF THE ROAD (O.C.G.A. 40-6-40)." The evidence adduced at his jury trial showed that on the evening of November 11, 1993, defendant was traveling south on Highway 27 in Floyd County, Georgia. Defendant's "truck [was] going very fast and all of a sudden he just crossed the [center] line," into opposing traffic. He struck the car operated by Christa Hutchins, inflating her airbag and tearing "all of the [driver's side] doors off of the car." Christa Hutchins' car "spun around several times." "The airbag went off in [her] face and [she] had a lot of cuts and a black eye; bruises where the steering wheel was and bruises on [her] knee and hip." She suffered "a lot of soreness; back soreness, hip soreness." Janice Crawford also saw defendant's "vehicle crossing the center line coming toward [her]." Defendant "struck the car in front of [Janice Crawford]. At that time, [she] knew it was going to hit [her] so [she] had applied [her] brakes." "There was no place to go. . . . Traffic was on both sides." Janice Crawford "was knocked unconscious." "They had to use the jaws of life stretching and cutting the car to free [Janice Crawford's] legs. [She] couldn't get [her] legs out." Janice Crawford's forehead was cut "under the hair[line]. They had to shave [her] hair to stitch it up." This injury left a scar "[a] couple inches [long]." Janice Crawford's right foot was broken, and her left leg required surgery. She now has "a rod the length of [her] femur and . . . a plate on the bottom part of [her] foot." She also sustained "a broken pelvis bone, [and] a broken collar bone." Laura Carpenter, a passenger in Janice Crawford's vehicle, sustained a dislocated right hip in the collision. She screamed when the emergency room physician "popped [her] hip back in place." Laura Carpenter's leg was put in traction and she stayed in the hospital for about a week. "[She] had to stay out of school for about three to four weeks after that." Her "right hip was chipped where they popped it back in place."

Defendant, who was in the driver's seat of his vehicle and "was in pretty bad shape," exuded "a pretty strong smell . . ." of alcohol. Bobby Pearson, then a Captain with the Rome City Police Department assigned to the traffic division and DUI Task Force, found defendant "could talk but he wasn't really coherent." Captain Pearson also detected a strong odor of alcohol on defendant's breath, "strong enough for [him] to notice immediately that it was alcohol or something associated with alcoholic beverages." Officer Jim Ferguson "went to Floyd Medical Center to take blood and urine samples from all of the drivers for a drug and alcohol test." Defendant's urine sample, taken at 6:10 p.m., tested positive for methamphetamine. De-

fendant's blood was drawn twice. From a sample "COLLECTED 11/11/93 [at] 18:00," the presence of alcohol was measured at "104." According to Dr. Paul Brock, this number "represents the concentration of alcohol that's found in his blood at a certain percentage. At Floyd Medical Center that would be equivalent to a 10." A second sample, drawn at 6:40 p.m., was tested by Robert Brown of the Georgia Bureau of Investigation, Division of Forensic Sciences. This second blood sample "was positive for ethyl alcohol 0.06 grams percent." The difference was explained by Dr. Robert Holcolm as a result of the passage of time and the intravenous infusion into defendant of four liters of fluids between 6:00 and 6:40.

Defendant gave a non-custodial statement to Officer Janet Moon of the Rome City Police Department. Defendant explained to Officer Moon that, in order to overcome congestion from a bad cough, he "had half a bottle of cough syrup left and he filled the other half up with Canadian Club and that's what he drank." "He felt the cause of the accident was because he went to sleep [at the wheel]." Robert Brown calculated that, if a 195-pound male consumed four ounces of 90 proof whiskey at 3:00 p.m., then at 6:00 p.m. his blood alcohol level would be approximately 0.01 grams percent, because the average person metabolizes alcohol at approximately "0.015 grams percent per hour." Donald Dicks, a forensic toxicologist with the Georgia Bureau of Investigation, Division of Forensic Sciences, tested defendant's urine sample. "The urine test for the amphetamine type drugs indicated a positive." Donald Dicks then extracted the drugs from the urine sample for testing under the "gas chromatography mass spectrometry." Along with ephedrine and pseudoephedrine, he "also found amphetamine and methamphetamine." Methamphetamine is "primarily illegal. There is a prescription used for attention deficit disorder." In the opinion of Donald Dicks, the stimulative effect of methamphetamine would not counteract the depressive effect of alcohol; rather "[o]ne drug would enhance the other." The person "would still be affected by the alcohol but the . . . methamphetamine would make him hyper[active]."

The jury found him guilty on each count. Defendant's direct appeal to the Supreme Court of Georgia was transferred to the Court of Appeals of Georgia. *Held*:

1. Defendant first contends the trial court erred in denying his motion for directed verdict as to the two counts of causing serious injury by vehicle. He argues first that the State failed to make out the statutory element of serious disfigurement. Secondly, defendant contends the State failed to prove the injuries to Janice Crawford and Laura Carpenter *resulted* from his driving under the influence of alcohol or drugs, arguing the State failed to prove a violation of OCGA § 40-6-391.

(a) "Whoever, without malice, shall cause bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 or 40-6-391 shall be guilty of the crime of serious injury by vehicle." OCGA § 40-6-394. " 'Black's Law Dictionary defines "disfigurement" as "that which impairs or injures . . . the appearance of a person . . . ," and defines "serious" as "grave, (or) great." ' *Baker v. State*, 246 Ga. 317, 318 (2) (271 SE2d 360) (1980)." *In the Interest of H. S.*, 199 Ga. App. 481 (405 SE2d 323). In the case sub judice, the issue whether Janice Crawford's two-inch "scar constituted serious disfigurement was a jury question. *Barfield v. State*, 170 Ga. App. 796 (318 SE2d 219) (1984); *Thompson v. State*, 156 Ga. App. 1 (273 SE2d 894) (1980), cert. denied." *Grace v. State*, 210 Ga. App. 718, 719 (2) (437 SE2d 485), interpreting identical language under the aggravated battery statute, OCGA § 16-5-24 (a). As to Laura Carpenter, she was deprived of her ability to walk for the several weeks during which period her dislocated hip was rendered useless. "To constitute the crime of [serious injury by vehicle], there is no requirement that, in addition to being 'serious,' the [member of the victim be permanently rendered useless]. The evidence in this case demonstrates, at the very least, 'serious *temporary* [uselessness of Laura Carpenter's hip and consequently, her legs].' (Emphasis [in original.]) *Baker v. State*, 245 Ga. 657, 667 (6) (266 SE2d 477) (1980)." *In the Interest of H. S.*, 199 Ga. App. 481, supra.

(b) "OCGA § 40-6-391 (a) (3) provides, 'A person shall not drive or be in actual physical control of any moving vehicle while: . . . Under the combined influence of alcohol and any drug to the extent that it is less safe for the person to drive.' *Howell v. State*, 179 Ga. App. 632, 634 (1) (347 SE2d 358) (1986). . . . The statute does not require a certain amount [of controlled substance] to be shown." *Kerr v. State*, 205 Ga. App. 624, 627 (3) (423 SE2d 276). In the case sub judice, the physical evidence is undisputed that defendant crossed the double yellow line and crashed into two cars coming from the opposite direction. The testimony of Robert Brown of the Georgia Bureau of Investigation as to the possible effects of the combination of methamphetamine and alcohol, coupled with defendant's own surmise that he fell asleep at the wheel, is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's conclusion that defendant is guilty, beyond a reasonable doubt, of causing serious injury by vehicle due to his violation of OCGA § 40-6-391 (a) (3), as alleged. Consequently, the trial court correctly denied defendant's motion for directed verdict on each of the enumerated grounds.

2. The transfer of this appeal from the Supreme Court of Georgia to the Court of Appeals of Georgia constitutes a final determination that no constitutional challenge was in fact properly raised or else, if so raised, that it was not meritorious. *Ryals v. State*, 215 Ga. App. 51, 52 (1) (449 SE2d 865).

3. In his third enumeration, defendant contends the trial court erred "in permitting the State to inquire into and cross-examine [defendant] concerning a charge of driving under the influence in Alabama." He argues that he never opened the door to such cross-examination; that the State failed to lay a proper foundation; and that the State should have been required to produce a certified copy of the Alabama conviction. We agree.

A lengthy recitation from the record is necessary for consideration of this enumeration.[1] Defendant testified on his own behalf. On

---

[1] In the midst of his cross-examination by the State's Attorney, the following transpired: "[STATE'S ATTORNEY]: Now, . . . , would you agree that it's not a good idea to consume alcohol and drive? [DEFENDANT]: As sick as I was — oh, yeah, consume alcohol and drive that I — you'll find in my past I don't —. [STATE'S ATTORNEY]: (Interposing) Do you agree that it is a good idea not to consume alcohol and drive? [DEFENDANT]: I didn't feel like I was consuming no more than — what I had, I didn't feel like it would effect [sic] me. I was trying to get well. I was just trying to get better."

Whereupon, the State's Attorney asked for permission to approach the bench. At a colloquy before the bench between the Court and counsel, the following transpired: "THE COURT: Has he opened the door? [STATE'S ATTORNEY]: I think he has. THE COURT: I don't know if there's anything to open the door to but if there is, he has. [STATE'S ATTORNEY]: Yes, there is. [DEFENSE COUNSEL]: Such as? [STATE'S ATTORNEY]: Such as the DUI that was reduced to reckless driving when he went .24. . . . [DEFENSE COUNSEL]: I have not seen the test results. [STATE'S ATTORNEY]: He testified to them in his deposition [of January 31, 1994, at the Citizens First Building]. This statement was —. [DEFENSE COUNSEL]: What he told me was he was .02 and the reason it was dropped was because — by the prosecutor over there was because they told him he couldn't get a DUI conviction. That's what he has told me consistently. When he said .21 — Ms. Colston if you've got some kind of results from Alabama that you're looking at. [STATE'S ATTORNEY]: I have his statement is [sic] his deposition where he went .24. [DEFENSE COUNSEL]: But I don't think that's what he meant. I don't think that's what he meant. Because he has insistently told me from the —. THE COURT: Well, prior inconsistent statements are relevant. I'll let you go into it."

Whereupon, the following transpired before the jury: "[STATE'S ATTORNEY]: You just stated a moment ago, . . . that if you'll look into my past, you'll see. Is that not what you said? [DEFENDANT]: Yes, ma'am. I've not got a past history of — I've never been convicted of a DUI. [STATE'S ATTORNEY]: Have you — you have been charged with DUI where you went a .24, didn't you? [DEFENDANT]: Ma'am, they charged me because — and they had to throw it out because there was not enough alcohol in there to make it stick. The judge threw it out. [STATE'S ATTORNEY]: Do you recall giving that testimony in your deposition that you had a DUI that was reduced to a —. [DEFENDANT]: That was reduced to a reckless driving. I had had one and one half cans of beer it seems like that day. I had Michigan plates. It was after I moved back here and started in business a year or so ago; two years ago maybe. Yes, that — but I don't — I'm just not — . . . [DEFENSE COUNSEL]: Your Honor, for the record I would object to this line of questioning. I don't believe there has been a sufficient foundation laid to bring up whatever else. THE COURT: All right, sir. Number one, your client opened the door. Number two, counsel for the state represents to the court that she is reading from a prior sworn statement of this

cross-examination, the State queried whether defendant agreed that it was not a good idea to drink and drive. Defendant started to answer, "As sick as I was — oh, yeah, consume alcohol and drive that I — you'll find in my past I don't —." The State's Attorney interrupted defendant to repeat her question but then asked for a bench conference. Over defendant's "best evidence" objection, the State's Attorney was permitted to cross-examine defendant using his sworn deposition testimony that he had been arrested in Alabama for driving under the influence at a time when his blood alcohol level was supposedly .24 grams percent and that this charge had been disposed of through his guilty plea to reckless driving. Defendant attempted to explain to the jury that he had not understood the significance of the numeric description of his blood alcohol level at his deposition, and reasoned that it must have been only .02 because the Alabama charge for driving under the influence was thrown out and the charge reduced to reckless driving. He also testified without contradiction: "I've never been convicted of a DUI."

"Character is not put in issue within the meaning of OCGA § 24-9-20 (b) by inadvertent statements regarding defendant's good conduct. *Jones*[ *v. State*, 257 Ga. 753 (1), 758 (363 SE2d 529)]. Character should be placed in evidence as an affirmative defense." *Johnson v. State,* 261 Ga. 419, 420 (4) (405 SE2d 686). See, e.g., *State v. Braddy,* 254 Ga. 366 (330 SE2d 338). In the case sub judice, defendant's unfinished reply, "[Y]ou'll find in my past I don't —," is an inadvertent reference to past conduct and did not open the door to proof of defendant's bad character by proof of prior convictions. The trial court erred in reasoning otherwise. It is true that, " '[w]here the defendant testifies and admits prior criminal conduct, he has not placed his character "in issue" within the meaning of OCGA § 24-9-20 (b).

---

witness. Based upon those two things I will overrule the objection. [DEFENSE COUNSEL]: Yes, sir. Just for the record let me renew that I object to it on the grounds [sic] that the highest and best evidence would be the court record from Alabama. THE COURT: Your objection is noted."

The State's Attorney thereafter was permitted to read before the jury from defendant's deposition, where he had been asked whether he had ever been charged with driving under the influence and his answer: "[O]ne time I was charged with DUI which was reduced to reckless driving. . . . I registered very low, I had one and a half beers at that time. . . . With that beer and a half I registered .24 or something like that. . . ." When asked by the State's Attorney at trial whether he recalled that testimony, defendant replied: "That was a — it was so low that they couldn't charge me. I don't remember what the — I didn't know what the registered point was at all but it was so low that they couldn't make it stick. [STATE'S ATTORNEY]: You believe that a .24 is low? [DEFENDANT]: Twenty-four is way over the limits. Now I've learned what a .10 and a .06 means, it must have been a .02 because they automatically threw it out. It was so low I know I didn't have no problem. I know I didn't have to — you know —. [STATE'S ATTORNEY]: (Interposing) You pled to reckless driving in that case, didn't you? [DEFENDANT]: Yes, ma'am, I sure did. If I remember correctly it was reckless driving or something."

140

Rather, he has raised an issue which may be fully explored by the State on cross-examination. (Cit.)' *Jones v. State*, [257 Ga. 753], supra at 759 (b)." *Williams v. State*, 201 Ga. App. 866 (412 SE2d 586). In the case sub judice, however, defendant neither admitted nor denied having a criminal record. Accordingly, proof of any such a record remained legally irrelevant unless offered for some proper purpose. See generally *Ledford v. State*, 202 Ga. App. 694 (1) (415 SE2d 693). Finally, it is further true that, "for purposes of impeachment, the prior conviction of an adverse witness cannot be shown by cross examination of the witness; the question itself can be prejudicial even though a negative answer be truthful; hence the best evidence rule is invoked so that to impeach a witness by a prior conviction the conviction must be proved by the record of conviction itself, not by cross examination. See *Howard v. State*, 144 Ga. 169 (2) (86 SE 540) (1915); *Fincher v. Frost*, 225 Ga. 408 (2) (169 SE2d 309) (1969)." *Timberlake v. State*, 246 Ga. 488, 499 (6) (271 SE2d 792). Accord *Ledesma v. State*, 251 Ga. 885, 888 (4) (311 SE2d 427). In the case sub judice, the trial court erred in allowing defendant to be cross-examined as to the circumstances surrounding the Alabama arrest and conviction for reckless driving over defendant's "best evidence" objection. In *Fincher v. Frost*, 225 Ga. 408, 410 (3), supra, "the erroneous admission of the [oral] evidence [of previous convictions] . . . require[d] a reversal of the judgment. . . ." In the case sub judice, however, we are of the opinion that the forensic evidence renders the erroneous admission of this improper impeachment and character evidence harmless beyond all reasonable doubt, in that it is highly probable that this evidence (as explained by defendant) did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869). " 'To reverse a jury finding of guilty in the face of such overwhelming [scientific] evidence would be a perversion of justice.' *Hamilton*[ *v. State*, 239 Ga. 72, 76 (235 SE2d 515) (1977)]." *Richards v. State*, 157 Ga. App. 601, 602 (2), 603 (278 SE2d 63).

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED FEBRUARY 9, 1996 — ▮

*McClellan & Pangborn, John F. McClellan, Jr.*, for appellant.
*Stephen F. Lanier, District Attorney, Leigh E. Patterson, Assistant District Attorney*, for appellee.