553 S.E.2d 855 (2001)
251 Ga. App. 206
WASHINGTON
v.
The STATE.
No. A01A0962.
Court of Appeals of Georgia.
August 15, 2001.
*856 Joshua D. Earwood, for appellant.
T. Joseph Campbell, Dist. Atty., Donald S. Smith, Asst. Dist. Atty., for appellee.
BLACKBURN, Chief Judge.
Following a jury trial, Lynn C. Washington appeals her conviction for possession of cocaine with intent to distribute, contending that the evidence was insufficient to support the jury verdict and that the trial court erred by (1) denying Washington's motion for directed verdict, (2) not allowing counsel to question a witness regarding other witnesses' out-of-court statements, (3) ordering Washington to pay $82 in restitution. For the reasons set forth below, we affirm the judgment and vacate the sentence in part.
1. In separate enumerations of error, Washington challenges the sufficiency of the evidence and the trial court's denial of her motion for directed verdict.
The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of Jackson v. Virginia.[1]
(Punctuation and footnote omitted.) Yarbrough v. State.[2]
Viewing the evidence in this light, the record reveals that, on the afternoon of April 15, 1999, Lynn Archer visited the apartment *857 where his daughter, Tammy Kivett, resided.[3] Archer knocked on the door and heard an unknown person say that "they was in the tub." Archer left at that time but returned to the apartment at 8:30 p.m. Washington came to the front window of the apartment and spoke to Archer through the window for several minutes. Thereafter, Archer entered the apartment and found both Washington and James Timothy Glenn inside.[4] Archer told Washington and Glenn that they had no business being in the apartment. Lynn Archer then left and called his daughter to inform her that Washington and Glenn were in the apartment.
Not knowing either individual in her apartment, Tammy Kivett called the police, and two deputies arrived at the apartment after midnight. With Tammy Kivett's permission to enter the apartment, the deputies walked toward the doorway. Before the deputies had a chance to knock, however, Glenn opened the door. The lay out of the apartment was described as an "open floor plan." The deputies entered into the living room area, which was open and adjoined the dining room. From the living room, one could also look through an archway into the kitchen.
Inside the apartment, deputies found Washington, along with Glenn and Shari Denise Floyd.[5] Washington was standing in the kitchen area, with her hands in the kitchen sink. She appeared to be doing dishes. When Washington took her hands out of the sink, they were wet. The sink was filled with soapy water. Later, after the water and suds had drained, investigators found cocaine particles, a smoking device, scorched spoons, and a razor blade on the bottom of the sink. The authorities also found the following contraband scattered throughout the apartment: scorched spoons on the kitchen counter; a crack cocaine smoking device on the dining room table, in plain view; a light bulb that had been converted into a smoking device inside a "pumpkin" container in the bedroom closet; razor blades with residue on a shelf in the bedroom; razor blades with suspected cocaine residue, a copper-style scouring pad, and a plastic bag either in a drawer or on top of a small table located in the dining room area; a bag containing cocaine in the back of the toilet in the bathroom; and a syringe filled with liquid cocaine in a box behind the living room couch. Over 12 grams of cocaine were recovered from the apartment.
As Washington was escorted out of the apartment, Tammy Kivett observed that Washington was wearing one of her dresses, which had been in the apartment. Washington was arrested for burglary and possession of cocaine with the intent to distribute. She was not charged with theft of the dress. Although she was acquitted on the charge of burglary, the jury found Washington guilty of possession of cocaine with the intent to distribute.
Washington argues that the evidence demonstrated only her spatial proximity to the contraband, which was insufficient to sustain a conviction for constructive possession of cocaine.
Possession may be joint or exclusive, and actual or constructive. It is true that spatial proximity alone, or mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction. But where drugs are found in the immediate presence of the defendant, the jury is authorized to find they are in the constructive possession of the accused. The drugs here were found in the immediate presence of the appellant. The jury would be authorized to convict if they should find beyond a reasonable doubt that the appellant had actual or constructive possession either alone or jointly with others. If there is any evidence of guilt, it is for the jury to decide whether that evidence, circumstantial though it may be, is sufficient to warrant a conviction. *858 (Citations and punctuation omitted.) Widener v. State.[6] See also Carswell v. State.[7]
The evidence here demonstrated a connection between Washington and the contraband that went far beyond mere spatial proximity. When the police arrived, after midnight, Washington's hands were wet and in the very sink where crack cocaine and drug paraphernalia were later found. No other individual was shown to be in custody and control of the sink area. A jury could properly conclude that Washington had sole constructive possession of the contraband found in the kitchen sink.
The cases relied upon by Washington are inapposite. See Reid v.. State;[8]Paden v. State;[9]Diggs v. State.[10] In those cases, the defendants were not caught with their hands in the immediate presence of the contraband, as was the case here. Furthermore, although Washington properly contends that the facts must exclude other reasonable hypotheses, "[w]hether this burden has been met is a question for the jury, and its determination will not be disturbed unless the verdict is insupportable as a matter of law." (Punctuation omitted.) Carswell v. State, supra. The jury here was authorized to conclude that when Washington was caught in the apartment, after midnight, without the occupier's permission, with her hands in the sink which contained crack cocaine, a razor blade, scorched spoons, and a cocaine smoking device, she was not, as suggested by counsel, simply offering to "clean up a bit by washing the dishes."
In addition, a jury could infer that Washington had joint constructive possession of the other cocaine and drug paraphernalia found in the apartment. "By showing circumstantially that the three defendants had equal access to the cocaine, the evidence established that the defendants were parties to the crime, and thus, guilty of joint constructive possession of the cocaine. Such evidence is sufficient to meet the standard of proof required by Jackson v. Virginia." (Citation and punctuation omitted.) Lowe v. State.[11]
Washington was in the apartment at 8:30 p.m. and was there when the police arrived after midnight. No evidence was presented that she had left the apartment or the apartment area between 8:30 p.m. and midnight.[12] Therefore, a jury could infer that she had been in the apartment or in the immediate vicinity for at least three and one-half hours. Her appearance at the front window in the living room area, as well as the kitchen, indicates that she moved freely throughout the open living room, dining room, and kitchen area, where cocaine and drug paraphernalia were found, including some in open view. Furthermore, a jury could infer that since Washington was wearing Ms. Kivett's dress, she had been in the bedroom, where other paraphernalia with suspected cocaine residue was found. In addition, there was some evidence to indicate that Washington was "in the tub" earlier in the day, in a bathroom where more cocaine was found. Finally, the evidence of Washington's immediate involvement with the cocaine and paraphernalia in the kitchen sink supports a finding that she was also involved with the other contraband found in the apartment. See Brown v. State[13] (drugs found in defendant's possession supported finding that defendant was also involved with other drugs discovered on the premises).
*859 Viewed in the light most favorable to the verdict, the jury could properly infer that Washington was aware of the cocaine, was in control of same, and was in sole or joint constructive possession of it. Accordingly, we affirm the judgment and the denial of a directed verdict.
2. Washington contends that the trial court improperly limited the cross-examination of Virgil Kivett by excluding out-of-court statements allegedly made to him by Tammy Kivett and Lynn Archer, regarding Dale Archer's (Lynn Archer's son) use of drugs.
Washington contends that the proffered testimony concerning what Virgil Kivett heard about Dale Archer's alleged drug problem "tends to support appellant's theory of the case that she had been invited into the apartment by Dale Archer, who was to return that evening, and that she had no knowledge of drugs in the apartment." Dale Archer was not in the apartment at the time of the incident. Although the evidence showed that Dale Archer had previously owned the apartment where Ms. Kivett resided, he did not own or reside there at the time of the incident. Furthermore, while Washington and Glenn told the authorities that Dale Archer had given them permission to be in the apartment, they did not contend that the drugs belonged to Dale Archer.
The scope of cross-examination is within the sound discretion of the trial judge and will not be disturbed absent manifest abuse. Demetrios v. State;[14]Willett v. State.[15] The exclusion of hearsay evidence elicited during cross-examination is proper. Nelson v. State.[16]
OCGA § 24-3-1(a) provides that "[h]earsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." Testimony offered for the truth of the matter asserted is hearsay. Moclaire v. State.[17]
Here, the testimony was clearly offered to prove the truth of the matter asserted, i.e., proof that Dale Archer used drugs, to support a theory that Dale Archer was somehow responsible for the presence of the contraband in the apartment. Thus, the testimony clearly did not derive its value from the credit of the witness, Virgil Kivett, but rested solely upon the veracity and competency of those who allegedly made the statements. The proposed testimony was hearsay.
Washington argues, however, that the testimony was offered to contradict Tammy Kivett's and Lynn Archer's prior testimony regarding Dale Archer's alleged drug use. While the impeachment of a witness is an exception to the hearsay rule, there are certain foundational requirements which must first be met. "Before contradictory statements may be proved against [a witness], ... the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible." OCGA § 24-9-83. These foundation requirements are necessary to allow the witness to explain or deny the prior inconsistent statement. See Searcy v. State.[18]
In this regard, the cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place, and the person to whom made. If the witness denies the making of the statement, or fails to admit it, then the requirement of "laying the foundation" is satisfied and the cross-examiner, at his next stage of giving evidence, may prove the making of the alleged statement.
(Punctuation omitted; emphasis in original.) Horne v. State.[19]
*860 Washington's counsel failed to lay the proper foundation for the testimony. Tammy Kivett and Lynn Archer were never asked whether they made any statements to Virgil Kivett (or in his presence), let alone were they offered an opportunity to explain the alleged statements.[20] With no foundation laid, the testimony was properly excluded, and the trial court did not err in so ruling.
3. Washington contends that the trial court erred by ordering her to pay $82 for restitution in connection with the dress taken from the apartment. We agree and reverse the trial court's order for restitution.
A court may award restitution for a victim's damages incurred in connection with the same acts for which the offender has been convicted and sentenced. OCGA § 17-14-2(2); Martin v. State.[21] Here, appellant was not charged or convicted of theft of the dress. The act for which the trial court was authorized to impose sentence upon Washington was not the theft of the dress, but the possession of cocaine with the intent to distribute. See Robinson v. State.[22] Accordingly, the award of restitution was in error.
"A sentence or portion thereof that is unauthorized by law is a nullity and void." Harrison v. State.[23] Consequently, we vacate Washington's sentence as to restitution only and remand the case for corrective action by the trial court.
Judgment affirmed, sentence vacated in part and remanded.
POPE, P.J., and MIKELL, J., concur.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[2] Yarbrough v. State, 241 Ga.App. 777, 780-781(4), 527 S.E.2d 628 (2000).
[3] At the time, however, Tammy Kivett had been temporarily living at another location with Virgil Kivett.
[4] Co-defendant Glenn appeals his conviction separately and is not a party to this appeal.
[5] Co-defendants Shari Denise Floyd, Lisa Ann Brady and Mark Q. Carter are not parties to this appeal.
[6] Widener v. State, 242 Ga.App. 438, 529 S.E.2d 899 (2000).
[7] Carswell v. State, 201 Ga.App. 746, 747, 412 S.E.2d 572 (1991).
[8] Reid v. State, 212 Ga.App. 787, 442 S.E.2d 852 (1994).
[9] Paden v. State, 216 Ga.App. 188, 453 S.E.2d 788 (1995).
[10] Diggs v. State, 234 Ga.App. 335, 506 S.E.2d 683 (1998).
[11] Lowe v. State, 223 Ga.App. 172, 173, 477 S.E.2d 341 (1996).
[12] There was evidence that minutes before the police arrived, Washington was standing on the apartment balcony having an argument with others who were in the driveway.
[13] Brown v. State, 244 Ga.App. 440, 442-443, 535 S.E.2d 785 (2000).
[14] Demetrios v. State, 246 Ga.App. 506, 510(3), 541 S.E.2d 83 (2000).
[15] Willett v. State, 223 Ga.App. 866, 875(4), 479 S.E.2d 132 (1996).
[16] Nelson v. State, 188 Ga.App. 244, 372 S.E.2d 829 (1988).
[17] Moclaire v. State, 215 Ga.App. 360, 363(4), 451 S.E.2d 68 (1994).
[18] Searcy v. State, 214 Ga.App. 620, 621(3), 448 S.E.2d 468 (1994).
[19] Horne v. State, 204 Ga.App. 81(1), 418 S.E.2d 441 (1992).
[20] Lynn Archer was asked whether he ever made a statement to Glenn regarding Dale Archer's use of drugs. However, there was no evidence to suggest that Virgil Kivett was present during the alleged conversation (in fact, the evidence suggested otherwise).
[21] Martin v. State, 189 Ga.App. 483, 493(9), 376 S.E.2d 888 (1988).
[22] Robinson v. State, 169 Ga.App. 763, 315 S.E.2d 277 (1984).
[23] Harrison v. State, 201 Ga.App. 577, 583(5), 411 S.E.2d 738 (1991).