## A08A1242. ALLISON v. THE STATE.
### (667 SE2d 225)

MILLER, Judge.

A Jackson County jury found Steven Lamar Allison guilty of possession of methamphetamine. On appeal, Allison contends that the trial court erred in denying his motion to suppress. Since an officer discovered the contraband pursuant to Allison's consent to a search of his person, and Allison did not withdraw his consent, we disagree and affirm.

"Where the evidence on a motion to suppress is uncontroverted and credibility is not an issue, we review the evidence and the application of the law thereto de novo, construing all evidence in favor of the trial court's judgment." (Punctuation and footnote omitted.) *Wilson v. State*, 272 Ga. App. 291 (612 SE2d 311) (2005). So viewed, the evidence shows that on March 11, 2006, a Commerce Police Department officer was dispatched to the site of a possible burglary in process. According to a concerned citizen, three persons were crawling into a window of a business known as Rolling On Auto Sales. When the officer arrived on the scene, however, he concluded that it would be odd if there were a burglary in process because a bay door was open and people were walking around nonchalantly.

The officer walked into the bay area, where he eventually encountered three people, including Allison, who told him that they worked at the business. The officer telephoned the owner, who confirmed that the three individuals were his employees, but the owner also told the officer that he did not want the employees at the business at night. The officer then told the employees that if they came back at night they would be charged with criminal trespass.

The officer also asked Allison if "he minded me searching him." Allison responded that he did not. According to the officer, he decided to ask for permission to search because Allison was jittery, nervous, making "quick" actions, and would not make eye contact, which the officer found consistent with the behavior of a person under the influence of methamphetamine. The officer was not, however, concerned for his personal safety.

As requested, Allison began emptying the contents of his pockets onto a barrel. According to the officer, Allison was "very nervous and evasive about emptying his pockets." After removing the contents of his right pocket, he would not take his hand off the pocket, and it was

apparent that he was trying to cover it up.

The officer asked Allison if he had anything else in his pockets, and Allison said no. Allison then agreed to the officer's request to pat him down. According to the officer, Allison did not withdraw his consent to search, nor did he imply that he no longer wished to be searched.

Allison put his hands up on the wall, and when the officer patted Allison down, he felt a bulge in Allison's right watch pocket. The officer could tell that the bulge was from a plastic bag. The officer reached into Allison's pocket and removed a bag containing a white crystal substance which a field test showed to be methamphetamine.

At issue is whether the trial court correctly found that Allison consented, and did not withdraw his consent, to the search of his person which resulted in the discovery of the contraband. "The State has the burden of proving the validity of a consensual search and must show the consent is given voluntarily. The consent is not voluntary if it is the result of duress or coercion, express or implied." (Citations and punctuation omitted.) *Corley v. State*, 236 Ga. App. 302, 305 (1) (b) (512 SE2d 41) (1999).

Allison does not dispute that he consented to a search, nor does he contend that his consent was coerced or made under duress. Rather, Allison argues that he withdrew the consent to search before the officer discovered the contraband, or, in the alternative, that his consent to search did not extend to the watch pocket where the contraband was located.

The scope of a consent to search

> must be measured by all of the circumstances and not only what a person says in response to a request. The type, duration, and physical zone of intrusion is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?

(Citation and punctuation omitted.) *Springsteen v. State*, 206 Ga. App. 150, 152 (424 SE2d 832) (1992). In this case, Allison agreed to a general request by the police officer to search his person, he complied when the officer made the specific request that he empty his pockets, and he further agreed to a pat-down after the officer asked him if anything remained in his pockets. The officer did not ask Allison to consent to a search for weapons, indicate that the

search was for the officer's safety, or otherwise limit the request for a search. Given this exchange, we find that a reasonable person would have understood that Allison agreed to a search which extended to all of the contents of his pants pockets, including his right watch pocket. See id. at 152-153 (officer authorized to reach into suspect's pants pockets upon feeling a bulge where the suspect had responded to a request for consent to search by responding "okay," and voluntarily assumed a search position). Compare *Foster v. State*, 285 Ga. App. 441, 443-444 (646 SE2d 302) (2007) (when officer asked suspect to consent to a search for weapons, officer was not authorized to remove the contents of the suspect's pockets unless he came upon something that felt like a weapon or an object immediately identifiable as contraband).

Allison contends that even if he consented to a search of his pockets, he withdrew his consent to search because he declined to produce the contraband to the officer when he put the contents of his pockets on the barrel. We disagree. Although the officer could see that Allison appeared to be covering his pocket with his hand, and he discovered during the pat-down that there remained something in Allison's pockets, Allison took no action that could be objectively viewed as a withdrawal of consent. Rather, Allison told the officer that nothing remained in his pockets and then consented to a pat-down. By agreeing to the pat-down, Allison knew that the officer would not only see the contents of his pockets that he decided to put on the barrel, but would also sense any additional contents that could be detected by touch.

Therefore,

> [w]e reject [Allison's] argument that [his failure to produce the contraband] was . . . a "withdrawal" of his consent to search. It is true that consent to search may be withdrawn. And it is also true that the actions which may constitute a withdrawal are not categorically written in stone. But it is equally clear that any action which purports to be a withdrawal of consent must be recognizable as such based upon an objective standard of reasonableness. [Allison's failure to produce the contraband] cannot reasonably be construed as a "withdrawal" of consent. Instead, it is equally, if not eminently more, reasonable to view [the action] as an attempt to avoid the consequences of consent.

(Footnote omitted.) *Higdon v. State*, 261 Ga. App. 729, 734-735 (a) (583 SE2d 556) (2003).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 27, 2008.

*Donna A. Seagraves*, for appellant.
*Richard K. Bridgeman, District Attorney, Kristopher M. Bolden, Assistant District Attorney*, for appellee.