## S08G0708. O'NEILL v. THE STATE.

(674 SE2d 302)

HUNSTEIN, Presiding Justice.

We granted Brian O'Neill's petition for writ of certiorari to review whether the Court of Appeals erred by finding the evidence was sufficient to uphold O'Neill's conviction for possession of methamphetamine. *Bryant v. State*, 288 Ga. App. 863 (2) (655 SE2d 707) (2007). Because the Court of Appeals improperly relied on a statement by O'Neill's co-conspirator that was not admissible against O'Neill pursuant to OCGA § 24-3-52 and the admissible evidence in the record failed to exclude every other reasonable hypothesis except the guilt of the accused, OCGA § 24-4-6, we reverse.

The law is well-established that "to warrant a conviction based on circumstantial evidence, the State must prove not only that the evidence is consistent with the hypothesis of guilt, but that every other reasonable hypothesis of nonguilt is excluded." (Footnote omitted.) *Carr v. State*, 251 Ga. App. 117, 118 (1) (553 SE2d 674) (2001).

> "'When the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt.' [Cit.] 'Circumstantial evidence is worth nothing in a criminal case, if the circumstances are reasonably consistent with the hypothesis of innocence, as well as the hypothesis of guilt.' [Cit.]" [Cit.]

*Johnson v. State*, 159 Ga. App. 497, 499 (283 SE2d 711) (1981). The evidence in this case[1] established that law enforcement officers, acting on information obtained after a drug arrest, knocked on a motel room in Stapleton. Three men were in the room: Bryant, who answered the door; Horton, who had rented the room and was awake on the bed; and O'Neill, who was passed out on the bed. Bryant admitted the officers into the room. Because the first officer saw several knives, including one within a few feet of O'Neill's hand, the officers asked Horton and O'Neill to get off the bed. When Horton

---

[1] The evidence, as adduced at the bench trial in this case, consisted of three stipulations by counsel: (1) to venue; (2) to the admissibility of a written crime laboratory report in lieu of the crime lab employee's live testimony concerning the identification of the alleged controlled substances; and (3) to the trial court's use of the transcript from the hearing on defendants' motion to suppress, which contained the testimony of the three law enforcement officers involved in the arrests and the two co-defendants, Bryant and Horton, plus documents regarding the motel room registration.

complied, officers saw on the bed an ashtray containing two glass pipes of a type used for smoking methamphetamine. In response to seeing the pipes, the officers placed all three men in handcuffs and searched them. O'Neill was difficult to rouse and so "out of it" that he had to be "sat up" while the officers searched him. Nothing incriminating was found on O'Neill. However, after a packet with suspected methamphetamine in it was found in Horton's front pocket, the officers searched other containers in the room. Boxes claimed by Bryant and Horton were found to contain methamphetamine and other illegal drugs. Additionally, a ring-sized jewelry box containing 2.8 grams of methamphetamine was found "close to [O'Neill] . . . between where [O'Neill and Horton] were laying [sic] on the bed."

In regard to the charge against O'Neill, the Court of Appeals upheld his conviction for possession of methamphetamine relying on three evidentiary items: O'Neill's unconscious condition on the bed in the motel room; his proximity to the jewelry box and glass pipes on the bed; and a statement Bryant or Horton made to a law enforcement officer[2] "attribut[ing] O'Neill's unconscious state to the fact that he was having marital problems and had been drinking or smoking the entire night." *Bryant v. State*, supra, 288 Ga. App. at 868 (2). However, for the reasons that follow, we find that the last item was inadmissible as evidence against O'Neill and the remaining items failed to exclude the reasonable hypothesis that O'Neill had no knowledge of and did not possess the methamphetamine in the jewelry box, inasmuch as his physical condition was due to excessive alcohol consumption or other legal means and the methamphetamine in the jewelry box and the pipes was possessed and smoked by Bryant and/or Horton.

Turning first to the "drinking or smoking" statement, OCGA § 24-3-52 expressly provides that "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself." "[A] conspirator's post-arrest statement to police incriminating a co-conspirator terminates the conspiracy, rendering the statement admissible only against the declarant." (Footnotes omitted.) *Fetty v. State*, 268 Ga. 365, 371 (7) (489 SE2d 813) (1997). Accord *Brooks v. State*, 281 Ga. 14 (2) (635 SE2d 723) (2006), *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976) (incriminating statement made to police ends conspiracy). The evidence establishes that the officers took Horton and Bryant into custody upon spotting the glass pipes on the bed, at a time when

---

[2] The Court of Appeals incorrectly identified the witness who gave this testimony as Officer Lemacks. The record establishes it was actually Officer Marlow who so testified.

the officers did not know whether O'Neill was actually sleeping or just "playing possum." The "drinking or smoking" statement to the officers came as the officers struggled to search and handcuff the unresponsive O'Neill, i.e., after the defendants had been taken into custody.[3] Thus, whether the incriminating statement was made by Horton or Bryant, it was made after the conspiracy was terminated and, pursuant to OCGA § 24-3-52, was admissible only against the declarant. The Court of Appeals erred by considering this statement as evidence against O'Neill in assessing the sufficiency of the evidence to support his conviction.

Moreover, even if consideration of this statement were not precluded by OCGA § 24-3-52, the statement positively supports a reasonable hypothesis other than O'Neill's guilt. The officer's testimony is that Bryant or Horton claimed that O'Neill "had been *either drinking or smoking* the entire night." The use of the disjunctive "or" provides a reasonable alternative to explain O'Neill's condition so as to indicate that he may have passed out as a result of "drinking . . . the entire night."

The Court of Appeals also relied upon evidence of O'Neill's condition even though no evidence was introduced that his unconscious state was the result of smoking methamphetamine.[4] The State introduced no evidence of any laboratory test results that may have been conducted to prove the presence of methamphetamine in O'Neill's body. No expert testimony was introduced regarding the effects of methamphetamine and none of the law enforcement officers testified that O'Neill's condition appeared consistent with that of a person under the influence of methamphetamine. Compare, e.g., *Allison v. State*, 293 Ga. App. 447 (667 SE2d 225) (2008) (upholding officer's search of defendant whose behavior was consistent with person under influence of methamphetamine); *Stewart v. State*, 291 Ga. App. 846 (663 SE2d 278) (2008) (officers testified defendant appeared to be under influence of methamphetamine). Nor was any evidence introduced that *excluded* the possibility that O'Neill was passed out on the bed for a reason unrelated to methamphetamine, such as from an excessive consumption of alcohol. Not one of the three officers and two co-defendants who testified

---

[3] The transcript reveals the following testimony by the officer:
either Mr. Bryant or Mr. Horton, we were commenting on the fact that Mr. O'Neill was so incapacitated. We asked [Bryant or Horton] what the problem was and if I'm not mistaken [O'Neill] was separated from his wife or something had happened in his personal life and he had been either drinking or smoking the entire night was the reason he was in the condition he was in.

[4] The trial judge, at the hearing on the motion for new trial, also jumped to the same conclusion, as indicated when he stated that it was "obvious to me they were all in there smoking meth and [O'Neill] smoked until he passed out."

was asked about the presence or absence of any alcohol containers in the room or the presence or absence of any smell of alcohol on O'Neill. Under these circumstances, the fact that O'Neill was "passed out" on the bed could not establish that he had smoked methamphetamine as this fact did not exclude the reasonable possibility that O'Neill's condition resulted from alcohol intoxication, exhaustion or the ingestion of some legal substance, rather than methamphetamine.

O'Neill's conviction cannot be sustained by his proximity to the jewelry box containing methamphetamine and the glass pipes used for smoking the drug[5] found on the bed between where he and Horton were lying. As to the jewelry box, the record reflects the complete absence of evidence that O'Neill made any claim to or exerted any dominion or control over the box. See *Lockwood v. State*, 257 Ga. 796, 797 (364 SE2d 574) (1988) (constructive possession shown where person has "'both the power and the intention at a given time to exercise dominion or control over a thing'"). It is well established that a finding of constructive possession must be based upon some connection between the defendant and the contraband other than mere spatial proximity. *Mitchell v. State*, 268 Ga. 592 (492 SE2d 204) (1997). The three officers who testified were never questioned whether they had asked Horton and Bryant about their possible ownership of the jewelry box. Although both Horton and Bryant testified and variously claimed ownership of other containers in the room, neither defense counsel on direct nor the prosecutor during his cross-examination asked either of them about the jewelry box. In the absence of any denial of ownership, the evidence did not exclude the reasonable hypothesis that the jewelry box belonged to either Bryant or Horton, who had equal access to it and who, unlike O'Neill, were found with methamphetamine either on their person or in their belongings.

As to the two glass pipes, the State introduced no evidence of any laboratory test results that may have been conducted to prove O'Neill used either of the pipes or, as noted earlier, to prove the presence of methamphetamine in his body. Nor was there any evidence regarding where Bryant had been located in the motel room in relation to the glass pipes before he went to answer the door to the officers' knock so as to indicate he lacked equal access to the pipes. Given that there were three men in the room and only two glass pipes, the evidence adduced failed to exclude the reasonable possibility that only Bryant and Horton smoked the pipes.

---

[5] Crime laboratory test results, admitted by stipulation, established the presence of methamphetamine residue in at least one of the pipes.

*Davis v. State*, 270 Ga. App. 777 (1) (607 SE2d 924) (2004), cited by the Court of Appeals, does not support its affirmance of O'Neill's conviction based on his "joint possession" of the methamphetamine with Horton and Bryant because, in that case, the persons convicted were all conscious when police officers found them in possession of contraband. There may exist factual situations where possession of contraband can be established notwithstanding the defendant's unconscious or asleep condition at the time the contraband was found by police. E.g., *Combs v. State*, 271 Ga. App. 276 (609 SE2d 198) (2005) (conviction for possession of methamphetamine upheld where defendant found unconscious in driver's seat of parked vehicle with drug paraphernalia in lap); *United States v. Tyler*, 2006 U. S. Dist. LEXIS 5348 (M.D. Fla., February 13, 2006) (although defendant was unconscious when police found him in car with cocaine and firearm, fact that defendant's car was running, transmission was in drive and doors locked supported conclusion that defendant had recently and consciously transported firearm and cocaine so as to sustain convictions). See also *Kirby v. State*, 275 Ga. App. 216 (620 SE2d 459) (2005) (although defendant asleep when methamphetamine was being manufactured, evidence that defendant leased the home, that manufacturing process created strong and immediately apparent chemical smell and that defendant ingested meth was sufficient to uphold conviction for possession of methamphetamine). In the instant case, however, where there is only O'Neill's spatial proximity to the contraband, with nothing more to show his participation in any illegal act, and where there are two co-defendants who had equal access to the contraband and equal opportunity to possess it, the proved facts failed to exclude every other reasonable hypothesis save that of O'Neill's guilt. OCGA § 24-4-6.

Accordingly, we reverse the Court of Appeals' affirmance of O'Neill's conviction for possession of methamphetamine.

*Judgment reversed. All the Justices concur, except Carley, Thompson and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

I respectfully dissent because the majority has usurped the province of the trial court by essentially retrying this drug case and then wrongly concluding that the evidence fails to show that defendant O'Neill possessed methamphetamine. The majority reverses the Court of Appeals, and thereby, acquits O'Neill of the drug charge against him, based upon its determinations that the Court of Appeals improperly relied upon a statement made to police by O'Neill's co-conspirator, and that there exists another reasonable hypothesis save O'Neill's guilt. But, such reasoning is fatally flawed.

First, the issue before this Court is not an assessment of the

130

evidence recited by the Court of Appeals, but rather, scrutiny of the evidence considered by the factfinder at trial, which in this case was the trial court itself. In a bench trial, this Court is to presume that the trial court separated admissible evidence from inadmissible evidence and considered only the former in reaching its judgment. *Thomas v. State*, 284 Ga. 540, 545 (2) (668 SE2d 711) (2008). And the record in this case does not rebut the presumption that the trial court considered only admissible evidence in finding O'Neill guilty. This Court is never to re-weigh evidence or to resolve any conflicts in it; instead, our role is to review the evidence, post-conviction, in a light most favorable to the judgment of guilt, giving deference to the factfinder's assessment of the weight and credibility of the evidence. *Young v. State*, 280 Ga. 65, 66 (1) (623 SE2d 491) (2005). Our mandate is to apply the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Young v. State*, supra at 66 (1). Second, the majority bases its alternative "reasonable hypothesis" on the very statement that it finds inadmissible. There is little question that the evidence before the trial court, who was sitting as the finder of fact as well as the determiner of law in this case, was more than sufficient under *Jackson v. Virginia.*

As noted, O'Neill was tried before the court sitting without a jury, and he stipulated to the evidence presented at the hearing on his motion to suppress and to the results of the state crime lab's analysis of the seized contraband. He was found guilty of and sentenced for unlawful possession of methamphetamine inside a ring box found close to him in a motel room in which police uncovered significant quantities of methamphetamine, methylenedioxymethamphetamine, and alprazolam. The evidence against O'Neill, though circumstantial, was compelling. The motel room was rented by an area resident who paid cash, circumstances indicative of drug activity. When the police entered the motel room, they were confronted by a scene familiar to them in handling drug cases — the presence of weapons. There were knives scattered all around the room with a knife by O'Neill's hands. O'Neill appeared to be passed out on the bed, but the police considered him a threat to their safety in the event that he was feigning unconsciousness. O'Neill apparently could not stand when asked to do so and had to be helped to sit up for a "pat down." The officers spied on the bed near O'Neill the ring box in question and two glass pipes of a type commonly used to smoke methamphetamine placed in an ashtray. The ring box contained approximately 2.86 grams of crystal methamphetamine. All of the drugs found in the room, save the methamphetamine in the ring box, were claimed by or linked to one or the other of O'Neill's

companions. In addition, the officers learned from O'Neill's cohorts that O'Neill "had been either drinking or smoking the entire night."

Certainly, to warrant a conviction based upon circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but also must exclude every other *reasonable* hypothesis save that of the guilt of the accused. *Smith v. State*, 284 Ga. 304, 306 (2) (667 SE2d 65) (2008). The circumstantial evidence authorized the finding that O'Neill had equal access to the methamphetamine, and therefore, was in joint possession of it. *Davis v. State*, 270 Ga. App. 777, 779 (607 SE2d 924) (2004); *Washington v. State*, 251 Ga. App. 206, 209 (1) (553 SE2d 855) (2001). Compare *Granger v. State*, 142 Ga. App. 612 (236 SE2d 762) (1977). The fact that O'Neill may have been asleep or unconscious at the time the drugs were found does not preclude such a finding. There was ample evidence from which the trial court could conclude that O'Neill consciously and knowingly possessed the methamphetamine *prior* to his apparent loss of consciousness. *Barfield v. State,* 160 Ga. App. 228, 230 (3) (286 SE2d 516) (1981). Again, O'Neill's companions told police that O'Neill was in the altered state because of his nightlong "drinking or smoking," which is the statement taken to task by the majority. Contrary to the majority's assertion, the record does not establish the timing of the statement, much less that it was made after the men were in custody and the conspiracy at an end. In fact, the record supports the contrary conclusion. One of the officers testified that the men were "formally arrested" only "subsequent to the search of the room and after [the officers] had obtained all the evidence." The statement was admissible against O'Neill because the criminal enterprise, in which O'Neill was a co-conspirator, was still pending. *Redwine v. State*, 280 Ga. 58, 63 (3) (d) (623 SE2d 485) (2005); compare *Fetty v. State*, 268 Ga. 365, 371 (7) (489 SE2d 813) (1997). The obvious import of the statement is that O'Neill both smoked the crystal methamphetamine and consumed alcohol, resulting in his unresponsive state. But, even absent such statement, O'Neill's apparent complete loss of consciousness and difficulty in waking signaled a state other than normal sleep; the trial court could have readily surmised from its examination of the evidence at hand that O'Neill's lethargy and loss of consciousness were the after-effects, in whole or in part, of his ingestion of methamphetamine. See *Keef v. State*, 220 Ga. App. 134, 137 (1) (b) (469 SE2d 318) (1996) (defendant driver falls asleep behind the wheel following ingestion of methamphetamine and alcohol). Moreover, the trial court, when serving as factfinder at trial and in arriving at a judgment, may take into account knowledge gleaned from the court's own experience, in this instance, any experience in dealing with those under the influence of methamphetamine. *State v. Mallory*, 180 Ga. App. 815,

816 (350 SE2d 823) (1986). O'Neill's unresponsiveness in conjunction with the undisputed evidence of the crystal methamphetamine, the apparently-used drug paraphernalia and ashtray at O'Neill's fingertips, and the other suspicious circumstances outlined above raise the reasonable inference that O'Neill possessed, and indeed, personally used the methamphetamine.

Yet, the majority blinds itself to these circumstances, and produces its own alternative theory. The majority opinion hinges on its finding that the evidence suggests the hypothesis that only O'Neill's cohorts possessed and used the crystal methamphetamine, and that O'Neill lost consciousness solely as the result of his drinking alcohol or, as a fallback, some other unknown or undisclosed condition. But, this hypothesis is patently unreasonable. There was no evidence of O'Neill's exclusive drinking, much less copious alcohol consumption, save a strained construction of the co-indictees' statement to police, which statement has been wholly discredited by the majority. In fact, the only evidence to support the majority's offered hypothesis of O'Neill's drunkenness is the statement to police which the majority has decided was inadmissible. Thus, the majority's analysis forecloses its conclusion. The police officers testified in detail of what they observed after entering the motel room; yet, there was no mention of alcohol containers, empty or otherwise, found near O'Neill or in the motel room at all. Nor was there any evidence of the odor of alcohol on or about O'Neill. This would most certainly have been the case had O'Neill been drinking alcohol in such quantity so as to have rendered him unconscious solely from its ingestion. The trial court could consider the absence of evidence of O'Neill's alcohol consumption or the absence of evidence that O'Neill was suffering from some other condition which would have rendered him unconscious.

In any event, whether every reasonable hypothesis except that of the guilt of the defendant has been excluded is a question for the finder of fact. *Barfield v. State*, 160 Ga. App. 228, 231 (3) (286 SE2d 516) (1981). This is so because "the factfinder has heard the witnesses and observed them testify," and therefore, "is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court." *Boyd v. State*, 291 Ga. App. 528, 530 (662 SE2d 295) (2008). Here, the trial court sitting as factfinder resolved the issue of possession of the methamphetamine adversely to O'Neill. *Barfield v. State*, supra at 231 (3). It was authorized to reject as unreasonable possibilities which were only theoretical, as those now offered by the majority. *Walker v. State*, 282 Ga. 406, 408 (1) (651 SE2d 12) (2007).

Simply, the majority has parsed the evidence and substituted its judgment for that of the trial court. It has exceeded the bounds of

appellate review, resulting in Mr. O'Neill's unfounded freedom. The Court of Appeals correctly upheld the trial court's judgment of conviction against O'Neill, and it should be affirmed.

I am authorized to state that Justice Carley and Justice Thompson join in this dissent.

DECIDED MARCH 9, 2009.

*Gary V. Bowman*, for appellant.

*Tommy K. Floyd, District Attorney, David E. Slemons, Assistant District Attorney*, for appellee.