### A09A1067. MOLINA v. THE STATE.
(686 SE2d 802)

SMITH, Presiding Judge.

A jury found Omar Arrizon Molina guilty of trafficking in methamphetamine and trafficking in cocaine. Following the denial of his motion for new trial, Molina appeals, challenging only the sufficiency of the evidence. We find the evidence sufficient and affirm.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine the sufficiency of the evidence under the standard of *Jackson v.*

---

[28] (Punctuation omitted.) *Roberts v. Stennett*, 201 Ga. App. 155, 156 (2) (410 SE2d 356) (1991).

*Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Id.

So viewed, the evidence showed that an undercover agent with the Haralson/Paulding Drug Task Force purchased two ounces of methamphetamine from Molina on two occasions and one-half pound of methamphetamine on a third occasion beginning in October 2006. Molina admitted that the one-half pound of methamphetamine he sold to the agent was "short," agreed to give him an additional ounce, and arranged to meet the agent at a gas station. When the undercover agent met with Molina to get the additional ounce, Molina, "fool[ed] around with the hood area of the vehicle" he was driving, and "[s]hortly thereafter, [the agent] got the ounce of methamphetamine that was due." At some point, Molina offered to sell the undercover agent a vehicle that had a hidden compartment to conceal drugs for transport, and also gave the agent instructions on how to transport contraband.

Molina informed the undercover agent "of some business that he did in the North Carolina area," and told the agent that he had transported five "kilos" of cocaine to North Carolina on a previous occasion. The undercover agent set up a "large-scale deal" for the purchase of five pounds of methamphetamine and five kilograms of cocaine from Molina, but lost contact with him before the purchase could be made.

Agents received information from a confidential informant concerning the whereabouts of a vehicle Molina used in an earlier drug transaction, a green Chevrolet Tahoe. The informant explained that Molina would be picking up the vehicle from a Walmart parking lot on a certain day. On that day, agents set up surveillance based on the information given by the informant. They observed Molina and another male enter the Walmart parking lot in a white Pontiac Grand Prix with a North Carolina vehicle tag. The two men went inside the store and when they returned Molina drove away in the Grand Prix and the other man in the green Tahoe. The agents followed the vehicles to Cedartown, where both vehicles stopped in a hotel parking lot. Although agents had an arrest warrant for Molina, they decided to continue surveillance instead of taking him into custody.

The next morning, agents observed Molina driving the Grand Prix with two passengers. At approximately 1:20 in the afternoon, Molina returned to the hotel parking lot and was observed "negotiating something" with the driver of a Nissan Maxima. Around 3:00 p.m., Molina again left the hotel parking lot with the three passengers, leaving the Tahoe behind.

Molina drove the Grand Prix to an automobile body shop in Gwinnett County. Agents observed the hood of the Grand Prix raised with several individuals standing around. One of the agents testified

that Molina was "walking around the car. He would go to the front of the car and just around that general area." At some point, a burgundy Nissan Pathfinder pulled into the body shop. The driver walked up to Molina and handed him a white plastic shopping bag that "had some significant weight."

Shortly after Molina and his two passengers left the body shop with Molina driving, agents stopped the vehicle. Molina was seated in the rear driver's side seat. The male driver gave agents a North Carolina learner's permit. The female front seat passenger gave agents a driver's license that was suspended. Molina provided a driver's license with his picture but showing a different name. Following a search of the vehicle, agents found a white plastic shopping bag containing what was later determined to be 440 grams of methamphetamine and 250 grams of cocaine in the air intake under the hood of the vehicle. Molina and the two other occupants of the vehicle were arrested.

Molina testified that the two occupants in the Grand Prix were friends of his who came from North Carolina to "drink and dance and have a good time." He testified further that he drove the Grand Prix because he could not find the keys to his Tahoe, his friends were not familiar with the city, and the male passenger did not have a driver's license. Molina stated that he went to the body shop because he was told that someone there could make him a key to his vehicle. He stated further that he was a mechanic and that the man driving the Nissan Pathfinder was a friend who gave him some car parts in a white plastic shopping bag to install in the Grand Prix, which is why he lifted the hood of the vehicle. He claimed that he was unaware that there were drugs in the vehicle's air intake. Molina admitted to selling methamphetamine in the past, but refused to answer questions concerning the drug deals with the undercover agent.

On appeal, Molina argues that the evidence was insufficient because he was not in actual possession of the methamphetamine and others had equal access to the contraband.

> Possession of contraband may be actual or constructive. . . . A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise domin-ion or control over a thing is then in constructive possession of it. . . . If one person alone has actual or constructive possession of a thing, possession is sole.

(Citations omitted.) *Warren v. State*, 254 Ga. App. 52, 54 (1) (561

SE2d 190) (2002). Here, there was no actual possession because the contraband was found under the hood of the vehicle, and we must determine if the evidence was sufficient to support a finding of sole constructive possession.[1]

The evidence here showed that Molina conducted several drug transactions with an undercover agent — apparently retrieving drugs from under the hood in one of those transactions, offered to sell the agent a vehicle with a hidden compartment to conceal contraband and instructed him on how to conceal it, and admitted that he transported contraband from North Carolina. The evidence also showed that Molina drove a vehicle with a North Carolina tag on the day the drugs were found, that he was at the hood of the vehicle around the time he received a package wrapped in a white plastic bag, and that drugs were found under the hood shortly thereafter wrapped in a white plastic bag. Molina himself admitted to being under the hood where the drugs were found, although he claimed he did so to make a repair to the vehicle.

This evidence, although largely circumstantial, was sufficient for a rational trier of fact to find Molina guilty of the sole constructive possession of the contraband. See *Washington v. State*, 251 Ga. App. 206, 208 (1) (553 SE2d 855) (2001) (evidence sufficient to show sole constructive possession where drugs found in kitchen sink and defendant's hands were wet and in the same sink earlier); see also *Cochran v. State*, 300 Ga. App. 92, 94 (1) (a) (684 SE2d 136) (2009) (to warrant conviction on circumstantial evidence, the proved facts need exclude only reasonable hypotheses — not bare possibilities that crime could have been committed by someone else nor questions of reasonableness generally decided by jury).

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED NOVEMBER 10, 2009.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Margaret B. Benson, Assistant District Attorney*, for appellee.

---

[1] See *Benitez v. State*, 295 Ga. App. 658, 660 (1) (673 SE2d 46) (2009).